### THOMAS W. MASTERSON ET AL. V. JOHN W. HARRIS ET AL.

#### No. 2385.   Decided March 17, 1915.

**1.—Will—Probate After Four Years—Effect on Devisees in Default.**

The probate of a will more than four years from the death of the testator by parties not in default for failing to present it for probate within that time, and hence entitled to do so under the terms of article 3248, Revised Statutes, is not limited in its operation to the parties upon whose application it was probated, but enures also to the benefit of all devisees thereunder, though prohibited by the statute, by reason of their default, from themselves procuring such probate.   (Pp. 83-88.)

**2.—Same.**

The statute limits the jurisdiction of the court in admitting a will to probate after four years to applications made by persons not in default (Rev. Stats., art. 3248); but does not restrict the effect of the judgment so pronounced in establishing it as testator's will.   On the contrary, it prescribes a general and unlimited decree (Rev. Stats., art. 3274).   (Pp. 84-86.)

**3.—Same.**

The probating of a will is a proceeding *in rem* which binds all the world until revoked and set aside and establishes the status of the instrument as to everybody; and one against whom a judgment operates can not, in general, be denied the advantage of its operation in his favor. (Pp. 83, 84.)

**4.—Adopted Child—Promise to Devise Property.**

While a valid contract binding one to leave, at his death, property to another, is enforceable, a mere declaration of his intent that another's child should be treated as his own and should have a child's interest in his estate, followed by a formal statutory adoption as his child would not constitute such contract, nor estop him from disposing of his property by will in favor of his own children to the exclusion of the adopted one. Clark v. West, 96 Texas, 437, followed. (P. 88.)

Questions certified from the Court of Civil Appeals, First District, in an appeal from Galveston County.

*D. D. McDonald, Masterson & Masterson,* and *Williams & Neethe,* for appellants.—The court had jurisdiction of the parties and subject matter, and under the law had power to grant to the parties to the suit such relief as in the judgment of the court they were respectively entitled to under the pleadings and proof, and to refuse to grant relief to such parties as were not entitled to the relief sought. With all the parties before a court it can ascertain which are and which are not entitled, and render a judgment protecting all. In such cases the rights of those who are barred have either vested in the defendant or become unenforcible against him, and this can be conceded to him without sacrificing the rights of others. E. L. & R. R. Ry. Co. v. Culberson, 72 Texas, 379-80, 387; Stovall v. Carmichael, 52 Texas, 383; Lee v. Turner, 71 Texas, 264; Rowland v. Murphy, 66 Texas, 535; Samson v. Samson, 64 Cal., 327; note by Mr. Freeman to Powell v. Koehler, 49 Am. St., 710, 713, 715; 25 Cyc., 1273, 1274.

The statutes and decisions of the country show many instances in which some parties take under a will and others by descent, or by agreement, or by statute. McArthur v. Scott, 113 U. S., 340; Holt v. Lamb, 17 Ohio St., 374; O'Dell v. Rogers, 44 Wis., 136; Melms v. Pfeister, 59 Wis., 186, 18 N. W., 255; Goodman v. Russ, 14 Conn., 210.

The District Court having held that John W. Harris, Cora L. Davenport and Frederick K. Fisher were in default under article 1881 of Revised Statutes and not entitled to have the will of John W. Harris probated, and the Court of Appeals having in their opinion decided that John W. Harris, Cora L. Davenport and Frederick Kenner Fisher were in default under said statute and not entitled to probate of said will, and that the St. Mary's Orphan Asylum and W. T. Hefley were not in default and were entitled to the probate to protect and perfect of record the title to the tracts of land bought by them respectively— the legal construction of the probate in this case is a limited probate as a muniment of title to perfect the titles of the St. Mary's Orphan Asylum and Hefley, and did not affect the title to the body of the estate in which neither the St. Mary's Orphan Asylum or Hefley had any interest.

Rev. Stats., art. 3248; St. Mary's Orphan Asylum of Texas v. Masterson, 122 S. W., 587; Shaver's Admr. v. Ewalt's Extrs., 136 S. W., 130.

The agreement to accept the proposition of marriage, followed by the marriage, is a valid consideration to support the contract by Judge Harris that he would adopt the child as his own and make her his lawful heir, and give her a child's share in his estate if he died intestate, and if he should leave a will, she should have an equal share in his estate with his other children.    This agreement, followed by the legal adoption on the day of the marriage, wherein Judge Harris states the fact, "I have adopted and do hereby adopt as my legal heir the child of Mrs. Annie P. Dallam, whom I have this day married," conferred on the child a right by contract not subject to be revoked by will.    Jordan v. Abney, 97 Texas, 296; Merritt v. Morton (Ky.), 136 S. W., 137; Nowack v. Berger, 54 Am. St., 664; Quinn v. Quinn, 49 Am. St., 375.

*Edward F. Harris, Harris & Harris, P. A. Drouilhet, W. H. Newton, S. W. Fisher, W. F. Ramsey,* and *C. L. Black,* for appellees.—The only effect of the ante-nuptial agreement between John W. Harris and Annie P. Dallam that he should adopt her child, followed by his subsequent adoption of the child, was to constitute the said child a legal heir of said John W. Harris, give her all the advantages, rights and protection of a natural child and make her entitled to share equally with his other children by blood, in the event he should die intestate.    Rev. Stats. 1911, arts. 1, 2; Logan v. Lennix, 40 Texas Civ. App., 62, 88 S. W., 364; Clark v. West, 96 Texas, 437; Eckford v. Knox, 67 Texas, 200; Cyc., vol. 1, p. 930; Burnes v. Burnes, 137 Fed., 781; Steele v. Steele, 161 Mo., 566, 61 S. W., 815; Hanly v. Hanly, 93 N. Y. Supp., 864, 105 N. Y., App. Div., 335.

The agreement of John W. Harris to adopt Annie W. Dallam, followed by his subsequent act of adopting her, in nowise restrained or prevented him from disposing of his property in the manner provided in his will.    Same authorities.

The probate of the will on the application of the orphan asylum and W. T. Hefley inured not alone to the benefit of the successful applicants, but inured also to the benefit of the appellees as devisees under said will. Rev. Stats., 1911, art. 3248; McCann v. Ellis, 55 So., 303; Brennan v. Ellis, 55 So., 306: Singleton v. Singleton, 8 B. Monroe, 340; Tibbetts v. Berry, 10 B. Monroe, 473; Wells' Will, 4 Monroe, 152; Powell v. Koehler, 26 L. R. A., 480; Meese v. Keef, 10 Ohio, 362; Fraser v. Wayne, 39 Mich., 198; Wells v. Wells, 144 Mo., 198, 45 S. W., 1095; Croker v. Williamson, 102 N. E., 588; Floyd v. Floyd, 90 Ind., 130; Bradford v. Andrews, 20 Ohio St., 219; Miers v. Betterton, 18 Texas Civ. App., 430, 45 S. W., 430; Mauer v. Miller, 77 Kan., 92; Hefflefinger v. George, 14 Texas, 569; Davenport v. Hervey, 30 Texas, 309; Leach v. Prebster, 39 Ind., 492; John v. Tate, 26 Tenn. (7 Humph.), 388; Woerner on Administrations, sec. 227, star page 500; Ency. Pleading & Practice, vol. 16, pp. 1000 and 1048; Brown on Jurisdiction, sec. 131a; Cyc., vol. 40, p. 1370 at top of page.

The statute provides in plain words that a will may be probated after the lapse of four years as well as within four years, provided the applicant can show to the court that he is not in default in propounding the instrument. When the court finds that he is not in default, then the proceeding thereafter is just the same as if the will had been propounded within four years. The proof heard is the same, the judgment rendered is the same, and the effect of the judgment is the same. (See the following articles of Revised Statutes, 1911, in the order given: 3248, 3250, 3251, 3252, 3256, 3267, 3271, 3273 and 3274.)

The title of the appellees as devisees is derived from the will of John W. Harris and not from the probate thereof, and said will having been duly proven up and established as the last will and testament of John W. Harris, on the application of persons entitled to have same proven up, it became and was established for all purposes and may be used by these appellees as proper evidence of their title derived from same. All authorities cited under the preceding proposition, and the following: March v. Huyter, 50 Texas, 243; Welder v. McComb, 10 Texas Civ. App., 85, 30 S. W., 822; Laufer v. Powell, 30 Texas Civ. App., 604, 71 S. W., 551; Glover v. Coit, 36 Texas Civ. App., 104, 81 S. W., 139; Fowler v. Stagner, 55 Texas, 396.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

The certificate of the honorable Court of Civil Appeals is as follows:

"This is an appeal from a judgment of the District Court of Galveston County, now pending in this court. There are involved in the appeal novel questions upon which we can find no authority in this State or elsewhere, and as to which we are unable to arrive at a satisfactory conclusion. As a decision of these questions will, in our opinion, practically settle the case, we have concluded that it presents a proper case to be certified to the Supreme Court, where they can be finally determined.

"Stated as briefly as possible, and confining our statement to such facts as are material to the questions certified, the plaintiffs are the sole devisees under the will of Mrs. Annie Masterson, who died in 1900, leaving a will duly probated. (Except that one of the plaintiffs is sole beneficiary under the will of one of such devisees.) Of the defendants, John W. Harris and Mrs. Cora Davenport are children of John W. Harris and his wife, Annie P. Harris, both deceased. Frederick Kenner Fisher is only child and heir of one of such children, Mrs. Elizabeth Byrd Fisher, deceased, and B. R. A. Scott is one of the executors of the will of Mrs. Annie P. Harris. John W. Harris, the executor, is also sued in such capacity. Plaintiffs under appropriate averments, which need not be here more particularly set out, seek partition of the property of the estates of John W. Harris, Mrs. Annie P. Harris and Miss Rebecca P. Harris, another of the children of John W. and Annie P. Harris, who died intestate in 1900. It was alleged that these three estates of John W. Harris, Annie P. Harris, and Rebecca P.

Harris owned in undivided  interests and property sought to be partitioned, and that plaintiffs and defendants owned in undivided interests the property of said estates.   There is no controversy as to the interests of the parties respectively in the property of the estates of Mrs. Annie P. Harris and Miss Rebecca Harris, but defendants deny that plaintiffs have any interest in the property of the estate of John W. Harris proper.   Upon the trial the court decreed partition, recognizing the interests of plaintiffs in the property of the estates of Mrs. Harris and Miss Harris, but denied them any interest in the property of the estate of John W. Harris.   From this judgment this appeal is prosecuted by plaintiffs.

"John W. Harris died in 1887, leaving surviving him his widow, Mrs. Annie P. Harris, and four children of their marriage, towit, John W. Harris, Mrs. Cora Davenport, Mrs. Elizabeth Byrd Fisher, and Miss Rebecca P. Harris.   There also survived him an adopted daughter, Mrs. Annie W. Masterson, mother of plaintiffs, who was a daughter of Mrs. Annie P. Harris by a former marriage, and who had by instrument of writing duly executed by John W. Harris in 1852, on the day of his marriage to her mother, been adopted 'as his legal heir' under the terms of the statute, which instrument was duly recorded in the records of Matagorda County, where the parties lived, but none of the parties in interest knew anything of this act of adoption until it was discovered by one of plaintiffs in 1906.   By the terms of his will John W. Harris devised his entire estate as follows:   To his wife, one-fifth of all the property which he had acquired before the marriage and one-fifth of that portion which had been and may be hereafter acquired during the marriage, together with the Galveston homestead during her life with power to bequeath the same at her death to any one of more of their four children.   The bequest was stated to be an extinguishment of all claims which Mrs. Harris had to any of his separate property, or to the community estate, it being stated that much the greater portion of the property theretofore acquired was his separate estate.   The rest and residue of his property was left to their four children, towit, Rebecca P. Harris, John W. Harris, Lillie B. Harris (afterwards Fisher) and Cora L. Harris (now Davenport), share and share alike.   There was also left to Branch T. Masterson, husband of Annie W. Masterson, the sum of $3000 to be used in the education of their children, the present plaintiffs, but this legacy was made conditional upon Mrs. Harris accepting the terms of the will.   Mrs. Annie P. Harris, John W. Harris, Branch T. Masterson and Miss Rebecca P. Harris were appointed independent executors of the will without bond, and were each given $500 as compensation for their services.   The will was dated in 1880.   Judge Harris died in 1887.   Immediately after his death, upon reading of the will in the presence of the widow and four children, and Mr. Masterson, Mrs. Harris expressed great dissatisfaction with its terms to herself and also on account of its failure to make any provision for Mrs. Masterson.   The four children also thought that the will was unjust to their mother; and that to probate it would

'be a reflection upon their father's memory.' This feeling led to, and resulted· in, a family compact between Mrs. Harris and her said four children that all of the property should be treated as community; that Mrs. Harris should take one-half, and that the heirs at law of John W. Harris should take the other half. In order to carry out this compact it was agreed that the will should not be probated. This was done and the property has been since managed by John W. Harris as a whole for the benefit of the parties named and those claiming under them. The right of Mrs. Masterson, or her children after her death, to share in the property was not considered, in so far as the estate of John W. Harris proper is concerned. The legacy to Branch T. Masterson was never paid or demanded.

"In 1906 Thomas W. Masterson, one of the plaintiffs, found upon the records of Matagorda County, duly recorded on the day of its date, in all respects duly executed according to the provisions of the Act of 1850 (arts. 1, 2, title 1, Rev. Stats.) an instrument signed by John W. Harris, as follows:

" 'The State of Texas,
County of Matagorda.

" 'Know all men by these presents: That I, John W. Harris, a resident of the county and State aforesaid, have adopted and do hereby adopt, as my legal heir, Annie W. Dallam, the only child of the late Mrs. Annie P. Dallam, whom I have this day married.

" 'Given under my hand and seal this 1st day of July, one thousand eight hundred and fifty-two.

    (Seal)   ·                                " 'John W. Harris.

" 'Signed, sealed and delivered in the presence of
                                                " 'C. R. Patton,
                                                " 'I. R. Lewis.'

"At the time of this discovery Mrs. Annie P. Harris was living, but shortly afterwards she died, leaving a will whereby she left her property to· her two surviving children by Judge Harris, Frederic Kenner Fisher, son of Elizabeth Byrd Fisher, and the children of Annie W. Masterson, her child by the former marriage. As stated, the other child of John W. and Annie P. Harris had died in 1900 intestate.

"Upon the filing of this suit· in 1908, setting up the rights of Mrs. Annie W. Masterson, or her children, she being deceased, as an adopted 'legal heir' of John W. Harris, to participate in the distribution of his estate, St. Mary's Orphan Asylum of Galveston, a corporation, filed an application in the probate court at Galveston County to have probated the aforesaid will of John W. Harris, alleging as ground for such application, that it had in 1901 purchased from the heirs of John W. Harris certain lots in the city of Galveston, that at the time of their said purchase it believed that John W. Harris had died intestate, and that its vendors were entitled to his estate 'and a probate of the will is necessary and proper to complete, protect and make good of record

and in fact applicant's title to the above mentioned lots.' It was fur-
ther alleged that applicant was not in default in applying for the pro-
bate of the will because it did not know of its existence until about two
weeks before the filing of the application.

"To this application John W. Harris made answer (which answer
was adopted by Kenner Fisher, by his guardian, and Mrs. Davenport)
setting up the execution of the will, the death of John W. Harris and
the family compact herein referred to. They admitted the allegations
of the orphan asylum and its interest in the probate of the will and
that such probate was necessary and proper 'to complete, protect, per-
fect and make good of record and in fact its title' to the property men-
tioned. It was further represented that about eighty other persons, citi-
zens of Texas, occupied the same attitude as purchasers of lands from
said heirs as the orphan asylum, and that there was as to them the same
necessity to probate the will for the purpose of protecting their titles,
and in addition to that about 250 persons had leased lands from said
heirs and for the protection of their rights there was the same necessity
to probate the will. Respondents specially admit and recognize the right
of the estate of Mrs. Annie P. Harris to one-half of the property of
John W. Harris and Annie P. Harris, as fixed by law at the date of
the death of John W. Harris. The further allegation is made as to
the necessity for the probate of the will arising from the fact of the
discovery of the act of adoption by John W. Harris of Mrs. Annie W.
Masterson, as herein set out, and the filing of this suit for partition.
W. T. Hefley intervened also, praying for the probate of the will,
alleging that he was also purchaser of certain lands from the heirs of
John W. Harris, that the probate of the will was necessary to protect,
perfect and make good his title, alleging substantially the same grounds
that are set out in the petition of the orphan asylum.

"The probate of the will was contested by the plaintiffs in the present
action, devisees of Mrs. Annie W. Masterson, deceased. In their answer,
which is very lengthy, they alleged that 'John W. Harris and Annie
Pleasants Dallam, who was then a widow, then citizens of the County
of Matagorda and State of Texas, entered into an ante-nuptial mar-
riage contract in which they agreed to be married and John W. Harris
agreed that on the day of the marriage he would adopt as his legal
heir Annie W. Dallam, who was a child of said Annie Pleasants Dallam
by her former marriage. That in conformity with said contract said
John W. Harris and Annie Pleasants Dallam were married on the
1st day of July, 1852, and on the same day he, the said John W. Harris,
by an instrument in writing duly executed by him and duly filed and
recorded in the office of the clerk of the County Court of Matagorda
County, adopted said Annie W. Dallam as his legal heir and thereby
faithfully performed his aforesaid contract. That thereupon the said
Annie W. Dallam became the legal heir of said John W. Harris and
became entitled to all of the rights and privileges in law and in equity
of a legal heir of said John W. Harris.'

"They also alleged substantially the facts hereinbefore set out with

regard to the death of John W. Harris and the family agreement not to probate the will, setting out in detail the circumstances with regard thereto. They disclaim any right to or interest in the lands or other property conveyed to the orphan asylum or Hefley, or others, and admit the validity of all such conveyances and of all leases executed by said heirs, and disclaim any desire or intention to disturb the same. The said contestants conclude:

" 'And these contestants say that the legacy of three thousand dollars directed to be paid over to Branch T. Masterson to be expended in the education of these contestants by reason of said agreement not to probate either of said alleged wills and the actual failure and refusal to probate the same by said John W. Harris, Jr., Rebecca P. Harris, Lillie B. Fisher and Cora L. Davenport, deprived these contestants of the benefit of said legacy and the same remained in the estate in which each of said parties have been receiving and are entitled to receive their respective shares, and by asserting their right thereto as heirs at law each of said parties is estopped to deny that they hold their respective shares as such heirs and by asserting their right thereto as heirs at law each of said parties are estopped to deny that they hold their respective interests as heirs at law of said John W. Harris and are estopped from having either of said alleged wills probated, and are estopped to claim as devisees under said alleged wills, or either of them, and these contestants deny that said alleged will attached to the application of said St. Mary's Orphan Asylum, or said Exhibit X and attached to the answer of said John W. Harris, or either of said papers, is the last will of said John W. Harris, deceased.

" 'Wherefore these contestants pray that all of said applications for probate of said alleged wills of said John W. Harris, deceased, be refused and dismissed at the cost of the respective applicants.'

"The County Court in this proceeding admitted the will to probate upon the application of all the persons praying therefor. On appeal to the District Court probate was refused upon any of the applications. From this judgment the orphan asylum, Hefley and John W. Harris, Kenner Fisher and Mrs. Davenport appealed. The orphan asylum and Hefley gave separate appeal bonds, and John W. Harris, Kenner Fisher and Mrs. Davenport executed a joint appeal bond.

"By the judgment of the Court of Civil Appeals of the Fourth District the judgment of the District Court was reversed and judgment rendered 'that the applications of appellants, St. Mary's Orphan Asylum of Galveston, Texas, and W. T. Hefley, for the probate of the last will and testament of John W. Harris, deceased, be and the same is hereby granted.' The opinion of that court upon the original submission and also upon motion for rehearing (which is reported in 122 S. W., 587 [57 Texas Civ. App., 646], case styled St. Mary's Orphan Asylum of Texas v. B. T. Masterson et al.) is referred to and made a part of this statement to illustrate and explain the questions here presented.

"All of the facts herein set out were embraced in the pleadings of the parties by appropriate averments. The case was tried without a

jury. Conclusions of fact and law were filed. The conclusions of fact, with slight exception, are adopted by us. At the risk of repetition of much that has been heretofore stated, we have set out such conclusions.

" 'In the early part of the summer of 1852 Judge John Harris and Mrs. Annie P. Dallam, a widow with one child (Annie W. Dallam, about five years old—afterwards Annie W. Masterson by marriage with Branch T. Masterson) became engaged to be married. In his proposal of marriage to Mrs. Dallam, Judge Harris said that he would adopt her daughter, Annie W. Dallam, as his own child, and urged this as a consideration for Mrs. Dallam's accepting his proposal. She did accept his proposal so made, and on the day they were married, July 1, 1852, Judge Harris duly adopted the said Annie W. Dallam by an instrument in writing duly acknowledged and filed on the 16th day of that month in the office of the county clerk of Matagorda County, where at the time both parties resided. The fact that he had so adopted her was not known to any of the parties to this suit, or to any other member of the Masterson and Harris families, as far as disclosed by the evidence, until the month of July, 1906, when Mr. Thomas W. Masterson happened to discover the act of adoption in the office of the county clerk of Matagorda County.

" 'The court finds as a fact that it was intended by Judge Harris in his proposal to Mrs. Dallam that the child should be treated as his own, and that she should have a child's interest in his estate.

" 'So far as disclosed by the evidence, Mrs. Annie P. Harris never mentioned the fact of Judge Harris's promise to adopt the child of her first marriage to any member of the family until on the 1st day of April, 1887, after Judge Harris's death, when the two purported wills were produced by John W. Harris, Jr., son of Judge Harris, who, for some time previous to his father's death and on account of his failing health, had charge of his father's business affairs and custody of his papers, at a meeting of the members of the Harris family, consisting of Mrs. Annie P. Harris, her daughters, Lillie, Rebecca and Cora, and son, John W. Harris, Jr., and at which Mr. Branch T. Masterson was also present by invitation. She did not then mention it in the meeting, but after both instruments had been read and general surprise expressed at their contents, particularly at the attempt to dispose of the entire estate as though it were his separate property when it was notorious that it was community of the marriage, she called Mr. Branch T. Masterson aside in another room and expressed her own surprise that Judge Harris had not made provision for her daughter, Annie W., and then stated to him Judge Harris's promise at the time she accepted his proposal of marriage, and added that she had always supposed that he had kept his promise, but now that it seemed he had not. She subsequently made the same statement to one of her grandchildren, probably on more than one occasion.

" 'At said meeting it was agreed by Mrs. Harris and her children by Judge Harris, they being the exclusive devisees under each of said

instruments, not to offer the same for probate because they thought what they considered to be the injustice of the wills to Mrs. Harris would be a reflection on Judge Harris's memory; and it was agreed between them that the whole estate should be considered as community; Mrs. Harris taking her one-half interest and Mr. Harris's four children the other half in equal parts, as though he had died intestate; and Mr. Masterson being asked what he thought of this, assented to it, saying, in substance, that they could do what they pleased, that if they did not offer the wills for probate he would not; that they need not consider his children (referring to the legacy of $3000 for their benefit), that he was able to care for his own children. The wills were accordingly withheld from probate until after the discovery of the act of adoption, more than twenty years after Judge Harris's death; Mrs. Annie P. Harris and her daughter, Mrs. Annie W. Masterson, having died in the interim.

" 'The will of Judge Harris was duly probated in Galveston County on the 10th day of February, 1910, pursuant to the decree of the Court of Civil Appeals of the Fourth Supreme Judicial District, in the cause entitled "In the matter of the estate of John W. Harris, deceased, application for probate of will," No. 26,731 in this court, and to the orders of this court also made pursuant to said decree, and copy is hereto attached and marked Exhibit "B." The case is reported in 122 S. W., 587 [57 Texas Civ. App., 646.]

" 'The plaintiffs and those under whom they claim are the only devisees of Mrs. Annie W. Masterson; and the defendants (other than the executors and administrator) and those under whom they claim, are the only devisees of Judge John W. Harris; and said plaintiffs and defendants, and those under whom they claim, are the only devisees of Mrs. Annie P. Harris. These estates consist of a large number of tracts of land in different parts of the State and other property, which it is agreed, for the purposes of this case, was all originally community of the marriage of Judge John W. Harris and his wife, Annie P. Harris. The accounts of John W. Harris, Jr., who has had charge of the property since his father's death, have been audited and found correct.'

"The act of adoption referred to has been heretofore set out in full.

"Under the foregoing facts it is the contention of appellants, that,

"First. The probate of the will of John W. Harris by the Court of Civil Appeals is a limited probate enuring to the benefit of the orphan asylum and W. T. Hefley, and that appellees John W. Harris, Kenner Fisher and Mrs. Davenport having been held in default by said court in failing to probate the will within four years can take no benefits thereunder, but that as to them John W. Harris must be treated as having died intestate.

"Second. That by virtue of the ante-nuptial agreement of John W. Harris with Mrs. Annie P. Dallam and the subsequent act of adoption of her child, Mrs. Annie W. Masterson, he was estopped and prevented from making any will which by its terms did not make provision for his said adopted child equally with his own children."

The questions propounded for the determination of this court are as follows:

"First. Did the probate of said will enure to the benefit of appellees as devisees thereunder, or is the same to be limited in its operation to the parties upon whose application it was probated, towit, St. Mary's Orphan Asylum and W. T. Hefley?"

"Second. Does the verbal agreement between John W. Harris and Mrs. Annie P. Dallam, made in prospect of their marriage, and the subsequent act of adoption by John W. Harris of the child of said wife, operate to prevent or interfere with his right to make such disposition of his property and estate by will, as was done by the will admitted to probate?"

The first question involves alone a determination of the true scope and effect of article 3248, which is as follows:

"No will shall be admitted to probate after the lapse of four years from the death of the testator, unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years aforesaid; and in no case shall letters testamentary be issued where a will is admitted to probate after the lapse of four years from the death of the testator."

The question is rendered one of some difficulty for the reason that the statute is an unsatisfactory one in the expression of its intent. It is clear in its declaration that no will shall be probated after four years from the death of the testator unless the party making the application is shown not to be in default, but it fails to in anywise provide what shall be the effect of the probate in such case as to parties affected by the will but proven to be in default. It leaves that question to deduction, rarely an exact process; to be solved in the construction given this provision of the article.

Reduced to its simplest terms, the question is: Has the statute the effect of denying to parties shown to have been in default the benefit of a probate of a will duly decreed upon the application of others, because of its prohibition against a probate except at the instance of parties not in default?

There has been no decision of the question in this court, or in any other appellate court of the State. A review of the authorities elsewhere, beyond their affirmation of well established general principles, and a limited analogy which some of them possibly furnish, affords little aid in its solution; for the diligent research of able counsel has failed to discover the existence in any other jurisdiction of a statute in terms like this; and our own investigation for that purpose has been equally futile in its result.

An action to probate a will is generally recognized as a proceeding *in rem.* The judgment of probate is, therefore, as a rule, binding upon all the world until revoked or set aside. Steele v. Renn, 50 Texas, 467, 32 Am., 635; Connolly v. Connolly, 23 Grat., 657; Brock's Admr. v. Frank, 51 Ala., 85; Black on Judgments, sec. 635. The reason of the rule is that the issues in the proceeding are simply the competency of

the testator to make a will, and whether the instrument propounded for probate is his will. The judgment is not for or against any person, but determines the status of the subject matter of the proceeding; and when it duly establishes the instrument as the will, it is conclusive upon everybody. But of course the subject of the effect of the probate is, within proper bounds, one of legislative control and regulation, and it is competent for the Legislature to qualify or limit the general effect of such a judgment by appropriate statutory enactment. Was such the purpose of this statute? And, if that was the purpose, does the statute express it in legal effect?

To properly examine and test the correctness of the proposition that such was the purpose and is the effect of the statute, it should be considered as expressed in the strongest terms of which it is capable. Stated, we believe, as strongly as it may be, it is, that unless the result of the absolute denial of any authority to the court to probate a will after four years from the death of a testator upon the application of a party shown to be in default, which the statute embodies, is to deny him the benefit of any probate, it accomplishes nothing. For, it is or may be argued, what could be the purpose of denying the probate upon the application of a party in default, unless the consequence of his default is maintained by refusing him the benefit of any probate? And in this connection the further argument may be made and is made, that only by refusing a party shown to have been in default the benefit of any probate, however duly obtained, can an easy evasion of the statute be prevented; for, otherwise, he may procure one not in default to make the application and fully share in the results of the probate thus obtained.

It would do no credit to any intelligence to deny that there is much force in this position. It has been urged with marked ability in an exhaustive discussion, in which the whole argument was presented in its full strength. We shall now examine it.

The proposition assumes for its basis that a denial to the court of the power to probate a will upon the application of a certain class of parties, for a reason which the Legislature deemed sufficient, is equivalent to a denial of its authority to probate the will, generally, upon any application. This is true, because it proceeds upon the view that since, under the statute, after four years from the death of the testator, it may not be probated at all, except upon the application of a party shown not to be in default, after that period only a limited probate can be decreed, inuring alone to the benefit of the party making the application or those established by the judgment as not in default. How, under the logic of the proposition, the judgment could operate for the benefit of others not in default, but not so established in the particular proceeding, or some other lawful one, is difficult to be perceived. While it was shown upon this trial that these appellees were in default, the proposition necessarily denies the benefit of a probate to all parties in default, whether so established in the proceeding or not. It, therefore, would seem to require that the judgment determine

the parties for whose benefit it inures in order for it to have certainty of operation, a chief essential of a legal judgment. Suppose, for illustration, that in such a proceeding it was disclosed that· so far as known there were no parties affected by the will who were in default, and thereupon it was admitted to probate, generally; yet it should subsequently develop that there were parties affected by it, but in clear default, seeking to avail themselves of the benefit of the probate decree. According to this contention the fact of their being unable to obtain a probate of the will because of their default, would as fully operate to bar them from any benefit of the probate as though they had been expressly so adjudged in the original proceeding.

The proposition announces, therefore, as its necessary consequence, that because of this statute the court, in admitting a will to probate after four years from the death of the testator, is without the power to render any other decree than one limited in its effect. If this assumption is unsound, the proposition falls, for such is its basis. Only upon the allowance of this premise is there any support for the further contention, that a judgment of probate so rendered does not inure to the benefit of parties in default; for if under the statute the court has the authority to render a judgment unlimited in its operation, and does so,—as was the ·judgment in this case as expressed in terms,—such a judgment would possess full force and effect, establishing the will as to all the world and available to anyone affected by it, until set aside.

The chief difficulty experienced in admitting the conclusion that under this statute a. will duly admitted to probate· subsists as such in the judicial records of the State only for the benefit of a certain class of parties, and that the probate is of no beneficial effect as to others · in default, or adjudged to have been in default, lies in the fact that the statute does not purport to deal with that subject, and distinctly omits to do so. It is plain in its command to the court not to probate· a will except under the conditions it prescribes; but there it stops. It nowhere attempts to limit the effect of the judgment, once it is duly rendered; or alter its operation under the general rule which obtains in respect to judgments of probate, by pronouncing the exclusion from its benefits of anyone affected by the will.

With the statute containing no such provision, is a court at liberty, by construction, to supply it? Clearly not, unless the necessary effect of its express provision is to require that construction. That the statute will prove barren of result, or is susceptible of ready evasion, unless it be given such effect, may be a persuasive argument, if that is true, as we have already indicated; but it is not an altogether sound one; nor is it a. safe process in the construction of a statute. Its influence is frequently to prompt the substitution by a judicial tribunal of its judgment upon a matter of legislative concern for the will of the law-making body, rather than the exercise of its true function of simply determining what that .body has enacted. A court has no authority to provide for the omissions of the Legislature, or to do that which it has failed to effectually do. It should assume that the Legislature

fully expressed its purpose in the particular statute, and intended to confine its effect within the reasonable compass of the language employed.

The prohibition which the statute expresses is not, in our opinion, equivalent to a limitation upon the effect of the probate when duly decreed; neither is its necessary effect to deny to parties, though in default, any benefit of the judgment. The statute expressly recognizes it to be the duty of the court to probate the will when duly established, upon the application of one not shown to be in default. But in such a case it assumes no office whatever, and attempts to fulfill no function. So far as is expressed in its terms, its sole purpose is to provide when the court shall be *without* authority to act in the probate of a will; not how it shall act when *with* authority, nor what shall be *the effect* of its judgment when it so acts, with the qualification that the statute provides that letters testamentary shall not issue in any case of the probate of a will after four years from the death of the testator. As to how it shall act when it has the authority to act, is found in the regulation of other distinct statutes. And as to what shall be the effect of its judgment when it does so act with authority, is left, with the exception noted in respect to the issuance of testamentary letters, to the general rule of law governing the effect of a judgment of probate; for neither this statute, except as stated, nor any other attempts to control it.

It is not enough to say that if the statute is not given the effect of denying to a party shown to be in default the benefit of any probate of the will, the consequence will follow that he is relieved of the disadvantage of his default as soon as the will is admitted to probate upon the application of another. The question rather is, has the Legislature in this statute provided against that consequence? The answer to the suggestion is that it clearly has not done so; for, in respect to a party shown to be in default, the only provision it contains is that the will shall not be probated upon his application, a denial to him of the right to obtain its probate, but not a refusal to him of the benefit of a probate duly obtained. That the legal effect of simply denying to a party the right to obtain the probate of a will upon his application is not identical with that of refusing him the benefit of a probate which the law recognizes as valid, is manifest. One is to deny the exercise at his instance of the jurisdiction of the court; while the other has to do with the power of the court while acting in the lawful exercise of its jurisdiction. To declare, in effect, that in a given case or under a particular condition, the court shall have no jurisdiction, is not to impose a limitation upon its power to act when invested with jurisdiction, or upon the effect of a judgment rendered in its valid exercise. The discussion of the question might be extended, but it is summed up in what we regard as the conclusion inevitably produced by a full review of the subject, that the Legislature has not seen fit to limit the effect of a due probate of a will; and the utmost to which it has gone in the enactment of this statute is to deny to a party in default the right to obtain it.

Ample evidence is found in support of the view that in the enactment of our various statutory provisions there has been no intention to limit the effect of the probate of a will after four years from the death of the testator, except in respect to the issuance of testamentary letters. For the establishment of a will after the lapse of that period the law abates none of the requirements which it imposes in respect to an ordinary probate. The same procedure must be followed; the same proof is required; and the same record is preserved. The sole difference prescribed by our statutes between the effect of such a probate and an ordinary probate, is that in the former testamentary letters are not permitted to issue. The judgment which it is provided shall be entered, is the same in one case as in the other, as is shown by article 3274, which is as follows:

"Upon the hearing of an application for the probate of a will, if the court be satisfied from the evidence that such will should be admitted to probate, *an order to that effect shall be entered upon the minutes;* and such will, together with the application for the probate thereof, and all the testimony in the case, shall be recorded in the minutes, etc."

It may be pertinently asked, if it was the purpose to make exclusive the benefits of a probate of a will after the lapse of four years from the death of the testator, why provide, as in article 3274 it is provided, that a judgment establishing the will, generally, be entered?

Upon another ground it seems to us that such a probate is necessarily one unlimited in its effect. The estoppels of a judgment are mutual. One against whom a judgment operates can not, as a rule, be denied the advantage of its operation in his favor. When a will is probated after the lapse of four years from the death of the testator, upon the application of a party not in default, it is necessarily established as the testator's will as against everybody, including parties in default, and upon whose application, therefore, the court, under article 3248, would have been without authority to probate it. Unless this is true, the judgment of probate would be without any substantial effect or benefit to the party who seeks it and at whose instance it is decreed. If such a judgment is in its effect operative generally against all parties affected by the will, whether in default or not, upon what principle can its like operation in their favor be denied? Freeman on Judgments, sec. 159.

It should in this connection be understood that, of course, a party may upon the principle of equitable estoppel be denied the right to claim the benefit of the probate of a will; but that question is not involved here.

We have carefully considered the several authorities which have been cited, but do not feel that it is necessary to here enter upon a discussion of them, or an attempt to either apply or distinguish them. After all is said, the question still remains one purely of the construction of this statute, and that must be determined by the effect to be given its provisions under well established general rules which need not be

reannounced. It must be granted that unless the statute has the force of. qualifying the general rule governing the effect of a judgment admitting a will to probate, such a judgment, once duly rendered, as was the case here, is unlimited in its effect, and may be availed of for its proper purposes by anyone affected by the will, or his privies; and it is our opinion after an earnest study of the question that the statute does not possess such force.

The second question is clearly ruled, we think, by Clark v. West, 96 Texas, 437, 73 S. W., 797. Jordan v. Abney, 97 Texas, 296, 78 S. W., 486, is authority to the effect that a valid contract binding one of the parties to leave, at his death, property to another, is enforceable. But such a contract or agreement on the part of Judge Harris is not shown in the finding of fact upon which the question certified is predicated. All that is shown is a statutory adoption of his wife's daughter. The finding of the trial judge that in his proposal to Mrs. Dallam before their marriage, "it was *intended* by Judge Harris that her daughter should be treated as his own, and that she should have a child's interest in his estate," is not equivalent to a finding that such was his agreement. That may have been his purpose at the time, as it might be a parent's intention at any given time with respect to one of his own children; but it can not be said to amount to a binding agreement to that effect, having the force to impair his right of testamentary disposition of his estate. It is clearly held in Clark v. West that in the absence of a binding agreement on the part of the foster parent to leave property to the adopted child, the only effect of such adoption, in respect to the property of such parent, is to place the adopted child in the same position as that occupied by the parent's own children, with no vested right in his estate, and leaving the parent free to dispose of it by will.

We accordingly answer the first question certified that the probate of the will in question inured alike to the benefit of the appellees. And the second certified question is answered in the negative.