**CLOUD et al. v. CLOUD et al.**

No. 14065.

Court of Civil Appeals of Texas. Fort Worth.

April 5, 1940.

Rehearing Denied May 3, 1940.

Fred T. Arnold, of Graham, Guy Rogers, of Wichita Falls, and Robert Lee Guthrie, of Dallas, for appellants.

E. G. Thornton, of Olney, and Marshall & King and Penix & Penix, all of Graham, for appellees.

SPEER, Justice.

At the October, 1933, term of the County Court of Young County, Texas, the last will of Mrs. Nannie A. Cloud, deceased, was admitted to probate.

On December 30, 1938, Mrs. Addie C. Buford, for herself and as next friend of Tate Cloud, a person of unsound mind, filed in the Probate Court of Young County a petition contesting the validity of the will of Mrs. Nannie A. Cloud, and sought to have the probate proceedings had therein set aside. The grounds alleged were to the effect that the will so entered

828

for probate was void, because it had been executed by testatrix under duress of her son, Jesse W. Cloud; that the said Jesse W. Cloud had exercised an undue influence over his mother, the testatrix, to such an extent that the will did not speak the true desires of testatrix, but was executed by her at the instance of said son, because of fear for her own safety at his hands. Allegations were made that Tate Cloud, for whom Addie C. Buford appeared as next friend, was adjudicated to be of unsound mind and had been committed to the asylum shortly after the said will was admitted to probate, and had not subsequently been mentally competent to maintain a suit for the purposes therein set out.

Jesse W. Cloud, Eula Peacock, Ernest Poer, Florence Moore and husband, J. H. Moore, David Poer, Jesse Poer, Lorena Mitchell, Faydelle Poer, Mildred Poer, George Eidson, Jimmie Fay Gleghorn and husband, Bill Gleghorn, Ida Lee Shaw, Minnie Worrell, Arlton Show, Claude Worrell, Wayne Eidson, G. W. Eidson, Inez Eidson, Irene Eidson, R. B. Tidwell and J. B. Nehls were named as defendants and alleged to be the children and grandchildren of testatrix.

Jesse W. Cloud and certain other defendants answered by general denial, special plea of limitation and of res judicata (because of the decree of the probate court at the October 1933 term, from which no appeal was taken).

Other defendants appeared and answered through their respective attorneys of record, pleading the general issue.

A jury trial was demanded and after a very elaborate definition of "undue influence" was given by the court (of which no complaint is made), a single issue was submitted, which reads: "Special Issue No. 1. Do you find from a preponderance of the evidence that Mrs. Nannie A. Cloud was induced to make and execute the will in question and the provisions thereof, by undue influence of Jesse Cloud?" The jury answered, "No."

Judgment was entered on the verdict against plaintiffs in the capacity stated, from which this appeal has been perfected. The parties will carry the same designation here as in the trial court.

Under appropriate assignments of error, the appeal is based upon three propositions. They are, in effect, (1) the court erred in admitting in evidence over plaintiffs' objections, certified copies of parts of a lunacy hearing against Addie Buford, had in Dallas County, in 1917; (2) the court erred in refusing to grant plaintiffs a new trial, upon motion therefor, when it was shown that the judgment of the court entered at said lunacy hearing was one discharging the accused; and (3) because the court erroneously permitted, over the objection of plaintiffs, a party defendant to testify concerning transactions had with testatrix in violation of Article 3716, R.C.S.

As against plaintiffs' propositions 1 and 2, defendants contend that no error is shown for the reasons, (a) there was no evidence before the court tending to raise the issue of undue influence, and therefore no issue should have been submitted, but that an instructed verdict should have been given for defendants at the conclusion of taking testimony, and (b) that more than four years had elapsed since the probate of Nannie A. Cloud's will, when the contest was filed, and that the requested peremptory instruction should have been given.

We think it proper to just here dispose of the contention that a peremptory instruction should have been given for defendants because more than four years had elapsed since the will was admitted to probate.

An action to probate a will is an action in rem; the judgment is binding on everybody until revoked or set aside. Masterson v. Harris, 107 Tex. 73, 174 S.W. 570.

By Article 5534, R.C.S., it is provided that any person interested in a will may institute proceedings to contest it at any time within four years after the will has been admitted to probate and not afterward.

By Article 5535, R.C.S., it is provided that the limitation named in the preceding article does not apply to persons who at the time the cause of action accrues is a minor, or a person of unsound mind, and other classes named. "The time of such disability shall not be deemed a portion of the time limited for the commencement of the action and such person shall have the same time after the removal of his disability that is allowed to others by the provisions of this title."

It is indisputably true that in this case some of the defendants were minors at the

time the suit was filed. Those minors, along with other adult defendants, by their answer; joined plaintiffs in their prayer to the court to set aside the probate of the will. In their pleadings they asserted that they did not know the facts surrounding the execution of the will, but asked that the allegations of plaintiffs be determined by the court and if found true, that the probate be set aside.

Tate Cloud, one of the original plaintiffs, acting by his next friend, was shown to be an insane person. The record discloses that he had been twice adjudicated insane, once in 1935, and again January 27, 1938. The record of the testimony in the last hearing discloses a finding that he had been insane for five years. If it was true, as found by the jury, that he was insane five years before the hearing, then he was insane when the will was probated in 1933, and limitation would not apply to him. However, we find it unnecessary to determine his status since the contest inured to the benefit of the minors referred to.

No instructed verdict should have been returned, because the minors were entitled to prosecute the contest, and if they should succeed the will would be a nullity and its probate revoked. In such circumstances the estate would not pass under the purported will of Nannie A. Cloud, but by the law of descent and distribution. The fact that some persons other than the minors and perhaps the insane one, were barred by Article 5534, supra, would not prevent them receiving the benefit of a general judgment of the court setting aside the probate, if such one should be entered. Masterson v. Harris, supra; Buchanan v. Davis, Tex.Civ.App., 43 S.W.2d 279, affirmed by Commission of Appeals and opinion adopted by Supreme Court, 60 S.W.2d 192.

In all other respects there was ample evidence of probative force adduced upon the trial to raise the issue of undue influence. True, it was all disputed, but it is only when evidence is disputed or contradicted that an issue ever arises for submission to the jury. In City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652, 654, the Supreme Court approved the following statement of the law: "The evidence must be construed in the light most favorable to the party against whom the peremptory instruction was given."

Upon the trial below, defendants introduced the petition of plaintiff, Addie C. Buford, filed in an earlier contest of the will involved here, but which suit was subsequently abandoned. In that petition substantially all allegations of undue influence by Jesse Cloud upon the testatrix were made that are found in the present suit. At the time of the introduction in evidence of that petition, no limitation was put upon it for any particular purpose. It is now claimed that the only purpose for which it was introduced was in support of defendants' plea of res judicata, but no such expressed purpose appears in the record. Absent such a limitation, the document was in evidence for all purposes. Defendants are before us saying now that there was no evidence of undue influence. The petition introduced in evidence by them refutes this contention and it may be considered as a circumstance against them. Texas & N. O. R. Co. v. Patterson & Roberts et al., Tex.Civ.App., 192 S.W. 585; McClung Construction Co. v. Langford Motor Co., Tex.Civ.App., 33 S.W.2d 749; 10 R.C.L., p. 1098, § 289.

There was other evidence, if considered in its most favorable light to plaintiffs' contention, upon which a jury could have found for them. Mrs. Buford testified that defendant, Jesse Cloud, had told her that he had filed a partition suit in his mother's (testatrix) name and that he was going to handle the case; that as soon as he got that partition, his mother was going to make a will, and leave Tate (the insane plaintiff) out of it; that Mrs. Buford said maybe their mother would not make such a will and defendant, Jesse Cloud, said: "Oh, yes, she will, there isn't but one way to handle a woman and that was to tell her what to do and see that she does it." Mrs. Tyra, a sister-in-law to testatrix, but having no interest in the estate, either by inheritance or under the will, testified that she had known testatrix fifty years and had visited in her home often; that about two months before her death she told witness that she (testatrix) just had to make her will, that her life was in danger; that when witness went to leave, testatrix said she would not stay there any longer; that, "He will just beat me and he has pulled me around over the place by the hair." Witness remonstrated with testatrix, telling her that she just imagined such things. Witness said that Jesse Cloud was the

only son at home; that Mrs. Cloud had never expressed in witness' presence any more love for Jesse than for her other children; she apparently loved them all, just like any other mother; Jesse Cloud had remained at home and cared for the place and Mrs. Cloud depended upon him and he on her; the mother paid the bills.

Mrs. Buford, one of the plaintiffs, testified that her sister, Mrs. Peacock, one of the defendants, told her about two years before their mother's death that the mother had made a will and that Jesse Cloud would not let her (Mrs. Peacock) go with testatrix to the office where the will was to be signed, and that she (Mrs. Peacock) remained outside and when testatrix came out she said, "Jesse made her sign a paper and she didn't know what it was."

Other testimony is in the record to the effect that testatrix loved Tate Cloud (the insane plaintiff) better than she did her other children, but when Jesse Cloud was present she would not talk about him, or show her affections for Tate when Jesse was present.

Mrs. Buford testified that her brother, Jesse Cloud, drove their sister away from home and she committed suicide; that shortly before Tate Cloud left home, his brother Jesse beat him up; Tate went to Colorado and later to Kansas, got into trouble and went to the penitentiary from that state; that he had always been an epileptic and was finally adjudged insane and sent to the asylum.

By the will of testatrix, after all debts were paid, she gave to Mrs. Peacock and Mrs. Eidson, two of her daughters, each the mineral rights under 100 acres of land, and to Jesse Cloud the residue of her estate, including real and personal property; it appears that the estate consisted of about 700 acres of land, nine cows and other personalty, including $5,000 in cash.

Upon the testimony above referred to, the trial court concluded that an issue of undue influence was raised and properly, we think, submitted that question to the jury.

In Russell v. Boyles, Tex.Civ.App., 29 S.W.2d 891, writ dismissed, it was held that undue influence can seldom, if ever, be established by direct evidence, but is usually shown by circumstances. In Moore v. Horne, Tex.Civ.App., 136 S.W.2d 638, it was held that if the circumstances shown by the evidence are sufficient to raise the is-sue, the general rule is that the jury must draw its own reasonable conclusions from them.

This brings us to a consideration of plaintiffs' propositions, wherein they claim (1) that the court erred in admitting in evidence parts of the record in a lunacy proceeding in Dallas County against Addie Buford, and (2) when it was made to appear on motion for new trial that the accused was discharged by judgment entered, the court should have granted the motion in this case.

■ We sustain these assignments and must reverse the case for the error shown. We shall only discuss the first proposition, since in the view we take of the matter the second will become immaterial.

The background behind this case presents a situation which we think emphasizes the significance and effect of the evidence complained of. Here we have an old couple who, by diligence and thrift, had accumulated 1400 or 1500 acres of land in Young County, some livestock and apparently a competency of this world's goods. They reared seven children to maturity and insofar as is disclosed by the evidence, none were estranged from either of their parents. The husband died in 1902 or 1903; the mother died in 1933. During the mother's widowhood, the land had a potential value for oil and gas purposes and thereby enhanced the value of the estate. One by one the girls married and left home; an unmarried girl committed suicide The youngest boy, Tate Cloud, was afflicted with something like epilepsy; he could not get along with his older brother, at home, Jesse Cloud, and left to seek his fortune in another state; he got into trouble and was sentenced to the penitentiary, and having served his sentence, returned to Texas, became insane and was committed to an asylum. A daughter, Mrs. Addie C. Buford, one of the plaintiffs here, had domestic trouble, and her husband procured a divorce in Mexico; she held a judgment against him for more than $20,-000. She, for herself and in behalf of the insane brother, instituted this suit against all other members of the family, to set aside the probate of the mother's will. Certain of the defendants were beneficiaries under the will, while other defendants and the two plaintiffs were not.

After Addie C. Buford had given her damaging testimony concerning the con-

duct of Jesse Cloud, who is charged with having "unduly influenced" testatrix to execute the will in controversy, she was asked by opposing counsel if she had ever been tried in Dallas or in any other place for insanity, to which she answered in the negative.

Defendant offered in evidence certified copies of documents shown to be the complaint in lunacy against Addie Buford charging insanity, sworn to by M. G. Kennedy on May 4, 1917; the report made by the commissioners appointed by the court to investigate the charge showing that Addie Buford was of unsound mind, that she should not be placed under restraint or treatment and that under a general summary it was found that the extent and duration of respondent's mental unsoundness was "neighborhood row"; this was signed by the commissioners, all appearing to be physicians; they also introduced what purported to be an application for admission of respondent to the asylum at Terrell, Texas, signed by J. C. Buford, but the signature shows to have been changed so as to read, "J. E. Buford."

The plaintiffs objected to the introduction in evidence of those documents upon the ground that they were irrelevant, immaterial and shed no light on any issue in the case, and if offered for impeaching purposes, the point is immaterial and the witness could not be impeached upon an immaterial matter.

■ In the first place, the whole proceeding in the Dallas Probate Court was void and for that reason it became irrelevant and immaterial as to what was done. Under the statute (Acts 33d Legislature, Chapter 163, p. 341) effective at that time, no trial in such matters was provided for; upon an affidavit made and filed, the county judge appointed a committee, the members of which in such counties as Dallas, should all be physicians; they were commanded to make an investigation and to report to the court the result thereof. The law, as it then existed and under which the proceeding was had, was held by the Supreme Court to be void. White v. White, 108 Tex. 570, 196 S.W. 508, L.R.A. 1918A, 339. The witness said that she had never been tried for lunacy. Her answer was not contradicted by the documents offered, since no trial was provided for by the Act, and none is shown by the

documents to have taken place. It is not at all improbable that she was unaware that such an affidavit had been filed or that an investigation had been made by the Commission of physicians. Their report summarized their findings upon the nature, extent and duration of respondent's mental unsoundness, as a "neighborhood row". We respectfully pretermit a discussion of whether or not the participants in a neighborhood row are mentally unsound; we think it unnecessary to pursue the thought farther.

■ In the next place, such an inquiry of the witness could only be pertinent to her competency. The competency of a witness, wheher based upon immature years, lack of discretion or because he may have been adjudged insane twenty years before he offers to testify, is a matter addressed to the sound discretion of the trial court after being apprised of all the facts. It presents a question close akin to those involved in matters of the credibility of the witness, of which the jury is the exclusive judge, yet there are differences which will invoke the discretion of the court. 70 C.J. § 121, p. 91, and § 123, pp. 94 and 96.

We can only see in the matter raised an attack on the credibility of the party witness, Mrs. Buford, in an effort to destroy the effect of testimony given by her upon the issues properly in the case. She had said she had never been tried for lunacy. Defendants apparently thought that if they could discredit that statement in the minds of the jury, naturally it would have a tendency to weaken other testimony given by her.

■ The rule is well settled in this State that a witness may not be impeached on an immaterial matter; nor may he be questioned on cross examination about immaterial matters as a predicate for his impeachment. A witness need not only be prepared to answer inquiries about matters at issue; the rule does not go so far as to permit inquiries to be made concerning outside matters and then if the answer is unsatisfactory to the questioner, that he may offer extrinsic evidence to contradict or impeach the witness so questioned. In 45 Tex.Jur., § 193, p. 27, the rule is stated in this language: "* * * Neither in civil nor criminal cases may a witness be contradicted as to immaterial testimony, his answer to questions on cross-examination directed to such testimony being conclusive.

For the contradictory testimony would, at most, tend to show that the witness had been guilty of falsehood as to some matter immaterial to the case on trial; the hearing would be unduly protracted if testimony were allowed to be directed into such by-paths; and a witness is not expected to be prepared to meet charges of having made inconsistent statements as to immaterial matters."

■ Can it be said with certainty that in this case where plaintiffs lost their case that the admission in evidence of the documents was not harmful to their rights? In Bell v. Blackwell, Tex.Com.App., 283 S.W. 765, adopted by the Supreme Court, the doctrine of "harmless error" was fully discussed. In that case assigned error of improper argument of counsel was being considered. Court said, at page 767 of 283 S.W.: "If the rule of practice in such a case is not already settled by the authorities, it should be settled now." It was held that the contention made by counsel in that case that, "to authorize a reversal on account of error, there must be a finding of prejudice", is contrary to the prevailing rule of decisions in the State. Again, the court said, on same page: "What difference can it make if the jury considers something it should not consider, whether it be through an improper ruling of the court, the impassioned argument of counsel, or the clandestine receipt of information outside the courtroom? The nature of the error is the same, and the consequences to the injured party are identical in each case. There are not different rules of reversal based upon any such fanciful classification of error." The final determination of that court as a correct rule for the future was announced in this language: "* * Unless it affirmatively appears no prejudice resulted, or that there was no reasonable doubt of the harmless effect of the error, a reversal must follow." The case cited and from which we have quoted has been cited with approval more than a hundred times since its publication. The error pointed out in the admission of the documentary evidence was not harmless. The improper evidence was at least calculated to affect the verdict to be rendered upon highly controverted issues, and what better evidence could be produced to its harmful effect than that the jury resolved the issue against plaintiffs. The assigned error is sustained.

■ The third proposition urged by plaintiffs, as shown above, complains of the introduction of testimony by a party defendant in violation of Article 3716, R.C. S. Mrs. Jimmie Fay Gleghorn was a party defendant as disclosed by the pleadings; she, with defendant Jesse Cloud, answered and resisted throughout the trial of the case, every phase of plaintiffs' contentions; she did not, as did other defendants so designated by plaintiffs' petition, join plaintiffs in an effort to set aside the probate of the will, but sought to have it sustained. Mrs. Gleghorn was shown by the evidence to be a daughter of Mrs. Eidson, a daughter of testatrix and a beneficiary under the will. She was represented at the trial by the same attorneys who represented Jesse Cloud. She was called by her counsel to testify and not by plaintiffs' or by counsel for either of the other defendants who had joined plaintiffs in an effort to have the probate of the will set aside. True, her interest in the estate was not identical with that of her co-defendant, Jesse Cloud, or that of any other defendant, except her brothers and sisters who, like she, inherited from their deceased mother, the named beneficiary. Mrs. Gleghorn, under this state of the record, was permitted, over plaintiffs' objection, to testify concerning transactions had between her and testatrix. This was in violation of the provisions of Article 3716, supra. The assignment must be sustained.

For the errors pointed out, the judgment of the trial court will be reversed and the cause remanded. It is so ordered.