215 So.2d 585

**Mary Cecil Reese ROBINSON et al.**

v.

**Edward B. ROBINSON et al.**

3 Div. 119.

Supreme Court of Alabama.

June 29, 1967.

Rehearing Dismissed Dec. 15, 1967.

Jones, Murray & Stewart, Montgomery, Poole & Poole, Greenville, for appellants.

H. T. Fitzpatrick, Jr., and Rushton, Stakely & Johnston, Montgomery, for appellees.

LIVINGSTON, Chief Justice.

This is an appeal from a decree of the Circuit Court of Lowndes County, in Equity.

Complainants in the court below, appellees here, are the living children of George Robinson, and a granddaughter, who is a minor, the heir and only child of a deceased son of George Robinson, the minor being represented by her legal guardian.

The respondents in the court below are Mary Cecil Reese Robinson, individually, and as executrix of the Will of A. Pickett Robinson, deceased; George Marlow Reese, Jr., and six other named respondents who allowed decree pro confesso taken against them, and who did not appeal and have no further interest in the litigation.

The litigation is primarily concerned with the ownership of lands located in Lowndes

County, Alabama, known as the "McCarty Place," excepting 125 acres more or less thereof lying west and north of a certain gravel road. This litigation involves the construction of the Will of Eli W. Robinson, Sr., who died in 1937, and the Will of A. Pickett Robinson, who died in 1959. A. Pickett Robinson and George Robinson were the sons of Eli W. Robinson, Sr., who left surviving him several other children who are not involved in this litigation.

The bill of complaint for a declaratory judgment was filed in this cause on May 25, 1960, and it sought (1) an interpretation of *Item 6* of the Will of Eli W. Robinson, Sr., probated in 1937, (2) an interpretation of the Will of A. Pickett Robinson, probated in 1959, and (3) ancillary relief in the form of damages for waste to, and the detention of, the McCarty Place.

The three respondents, Mary Cecil Reese Robinson, individually, and as executrix of the Will of A. Pickett Robinson, deceased, and George Marlow Reese, Jr., filed a demurrer to the bill as amended. The demurrer was overruled and the respondents appealed from the ruling to this Court.

In Robinson et al. v. Robinson et al., 273 Ala. 192, 136 So.2d 889, this Court held that the bill contained equity and that a bona fide justiciable controversy was presented and the demurrer was properly overruled

The three respondents mentioned above then filed an answer which they made a cross bill, alleging, in substance, that George Marlow Reese, Jr., was a child of A. Pickett Robinson under the terms of *Item 6* of the Will of Eli W. Robinson, Sr., by virtue of an adoption contract and an adoption proceedings; that George Marlow Reese, Jr., now owns the McCarty Place and that A. Pickett Robinson did not commit waste on the McCarty Place before his death. The cross bill prayed for a removal of the cloud on the title of said George Marlow Reese, Jr., to said McCarty Place.

Complainants in the court below demurred to respondents' answer and cross bill and the demurrer was overruled. Complainants then filed an answer to the cross bill.

On December 17 and 18, 1962, testimony was heard ore tenus by the trial court. On July 1, 1963, the trial court rendered its final decree.

The respondents' motion for a rehearing was overruled on September 12, 1963 except for the portion seeking an exact division of the McCarty Place during the lifetime or widowhood of respondent Mary Cecil Reese Robinson. Respondents appealed.

A deed duly recorded in the office of the Judge of Probate of Lowndes County, Alabama, in Deed Record T, at page 251, a copy of which deed is exhibited to, and made a part of, complainants' bill of complaint, indicates that Eli W. Robinson, Sr., purchased sixteen hundred and sixty (1660) acres of land known as the McCarty Place in June of 1900.

Eli W. Robinson, Sr., died in 1937 leaving a Last Will and Testament, a copy of which is marked as Complainants' Exhibit 2, and attached to and made a part of the bill.

Under *Item 6* of the Will, 1553 acres of the McCarty Place, as described in Complainants' Exhibit 1, were devised as follows:

*"ITEM 6*

I will and devise and bequeath unto my son, A. Pickett Robinson all of my lands known as the 'McCarty Place' excepting the 125 acres more or less thereof lying West and North of the gravelled road, herein above devised to my son Eli W. Robinson, in Item 4 of this Will, said lands to be held and enjoyed by my said son, A. Pickett Robinson for and during the term of his natural life, and after his death, if he dies without children (or child) and before his wife dies, she, his wife to hold for and during the term of her life or until she marry again, their resi-

dence and one half of said McCarty Place; that after the death of my said son A. Pickett Robinson, leaving no child or children, or descendants thereof, one half of said McCarty Place, shall then vest in equal shares, share and share alike, in the children of my son George Robinson, and, that after the death of, or the marriage of the widow of said A. Pickett Robinson, the other half of said McCarty Place, together with the residence, shall also descend to and vest in the children of my said son George Robinson, equally share and share alike. I also give and bequeath to my said son A. Pickett Robinson all of the farming implements, live-stock and other personal property owned by me and located on said McCarty Place at the time of my death, and used in the cultivation of said place."

To avoid confusion, it will be noted here that Eli W. Robinson, as referred to in *Item 6* of the Will (above quoted) is Eli W. Robinson, Jr., the son of the testator, Eli W. Robinson, Sr.

Pursuant to the devise in the Will of his father, A. Pickett Robinson and his wife, Mary Cecil Reese Robinson, assumed control of the McCarty Place. On January 13, 1939, George Marlow Reese, Jr., was born the son of George Marlow Reese, Sr., and Letitia Allen Reese, and the nephew of Mary Cecil Reese Robinson. Obviously, George Marlow Reese, Jr., was born more than a year after the demise of Eli W. Robinson, Sr., and was not related to Eli W. Robinson, Sr.

Mr. and Mrs. A. Pickett Robinson were childless. Over the years, a very close relationship developed between A. Pickett Robinson and his wife, Mary Cecil Reese Robinson, and George Marlow Reese, Jr. The testimony reveals that George Marlow Reese, Jr., had a bedroom in the Robinson home; that A. Pickett Robinson taught George Marlow Reese, Jr., to hunt and fish; that A. Pickett Robinson provided for his education; that A. Pickett Robinson called

him "son," and that George Marlow Reese, Jr., worked on the Robinson farm, the McCarty Place.

This close relationship culminated on February 21, 1959 when A. Pickett Robinson and his wife entered into an adoption contract with Mr. and Mrs. George Marlow Reese, Sr., for the adoption of George Marlow Reese, Jr. On March 4, 1959, a petition for the adoption of George Marlow Reese, Jr., was filed in the Probate Court of Montgomery County, Alabama, by petitioners, A. Pickett Robinson and Mary Cecil Reese Robinson. On May 13, 1959, an Interlocutory Order was entered by Honorable John A. Sankey, Judge of Probate of Montgomery County, Alabama, conditionally granting the above-mentioned petition, which reads, in part, as follows:

"It is therefore ordered, adjudged and decreed by this Court that said petition be conditionally granted; that after the expiration of one year from this date, unless just cause be shown to the contrary, shall be made final and said child George Marlow Reese, Jr. be adopted by said Mary Cecil Robinson and A. Pickett Robinson to all legal intents and purposes."

On July 13, 1959, A. Pickett Robinson died. His Will was probated on September 1, 1959, and *Item II* of said Will is, in part, as follows:

"It is my will that title to that real estate held by me for life pass to the said George Marlow Reese, Jr. at my death."

On March 11, 1960, in the matter of the petition to adopt George Marlow Reese, Jr., the Probate Court of Montgomery County, Alabama, issued a final order of adoption which decreed, in part, as follows:

"It is therefore ordered, adjudged and decreed by the Court that the interlocutory decree heretofore granted in this cause be and the same hereby is made final to the extent that the said George Marlow Reese, Jr., an adult, be and

he hereby is decreed to be legally adopted by Mary Cecil Robinson; * * *."

George Marlow Reese, Jr., now claims to own the McCarty Place in fee simple by virtue of the Will of Eli W. Robinson, Sr., by the alleged adoption, by the contract of adoption, and by the Will of A. Pickett Robinson.

The pleadings in the cause have been summarized above.

Complainants insist that they own the property subject to the life estate of A. Pickett Robinson's widow in one-half of the McCarty Place. Complainants make this claim because they contend that A. Pickett Robinson died in 1959 leaving no "child" as defined in *Item 6* of the 1937 Will of Eli W. Robinson, Sr.

In its final decree of 1963, the court found and opined as follows: That the complainants were entitled to a substantial part of the relief prayed for; that A. Pickett Robinson died without a child; that Mary Cecil Reese Robinson was entitled to hold the main dwelling, and land within the curtilage thereof, of the McCarty Place, and in addition an undivided one-half of the rest of the lands devised by *Item 6* of the Will of E. W. Robinson, Sr., until her death or remarriage; that the complainants collectively own the fee simple title to all of the lands thereby devised, subject to the limited estate of respondent Mary Cecil Reese Robinson; that respondent George Marlow Reese, Jr., has no right, title, claim or interest in or to the lands devised in *Item 6* of the Will of E. W. Robinson, Sr.; and that complainants recover of Mary Cecil Reese Robinson and George Marlow Reese, Jr., the sum of $4,185.75 representing one-half of the rental value of the farm and pasture land and one-half the rent collected from the fish pond. The claim for waste and cutting timber was disallowed.

Appellants again argue that the trial court was in error in its decree overruling the demurrer to the amended bill when the trial court held that A. Pickett Robinson "took only a life estate in that part of the McCarty Place." Appellants argue that A. Pickett Robinson took a base fee subject to divestiture rather than a life estate.

■ *Item 6* of the Will of Eli W. Robinson, Sr., devised unto A. Pickett Robinson the McCarty Place " * * * for and during the term of his natural life, and after his death, if he dies without children (or child) * * *." This devise plainly manifests its meaning and clearly creates an estate in A. Pickett Robinson for life rather than a base determinable fee. For an excellent discussion on this point, see *Rosenau v. Childress*, 111 Ala. 214, 20 So. 95, from which we quote the following:

"* * * By it the property mentioned, real and personal (the latter not being in controversy here), was given to Mrs. Read, 'to be held and enjoyed by her during her natural life, and after her death to be equally divided among her children, if she shall leave children, and if not then to be equally divided among my other children, to be held by them in the manner before described.' The provision created an estate in Mrs. Read for her life, with remainder to the testator's other children, contingent upon the death of the life tenant without children her surviving. * * *"

■ Certainly, George Marlow Reese, Jr., cannot be considered the legally adopted child of A. Pickett Robinson. "Adoption proceedings are wholly statutory and do not depend on equitable principles. * * * In order to constitute one an adopted son of another, there must be judicial proceedings to that end conformably to the statute. Equity has no power to declare an adoption." *Rivers v. Rivers*, 240 Ala. 648, 200 So. 764. From the facts presented above, it is clear that A. Pickett Robinson died before the conditions upon which he could adopt the child had been met and prior to the granting of the final decree of adoption.

Appellant contends that equity will recognize as done that which ought to be done; that the adoption contract, the proceedings, and the actions of the parties constitute a de facto adoption; that, therefore, appellant should inherit through A. Pickett Robinson by virtue of the above. Appellant relies on the cases of Luker v. Hyde, 253 Ala. 283, 45 So.2d 32, and Bennefield v. Faulkner, 248 Ala. 615, 29 So.2d 1.

In the final appeal of Luker v. Hyde, 260 Ala. 248, 69 So.2d 421, this Court concluded that "equity has no power to declare an adoption." In the *Luker* and *Bennefield* cases, supra, the problem actually deals with specific performance of a contract to inherit property owned by the foster parent. This state has consistently held that where there is a contract to adopt a child of another, although not accompanied by a statutory adoption, an equity court may decree specific performance of the contract to allow inheritance of property owned by the foster parents; however, the equity court may not construe the contract as making the child a legally adopted child of the foster parent.

Through specific performance of the adoption contract in this case, appellant, George Marlow Reese, Jr., may share in the estate of A. Pickett Robinson, but, on the death of A. Pickett Robinson without children or child, his life estate in the McCarty Place terminated and, thus, the McCarty Place is not a part of A. Pickett Robinson's estate.

Appellee's three cross-assignments of error, as argued in brief, question the trial court's ruling which disallowed the claim for waste by the cutting of timber. The court found:

"9. That before his death E. W. Robinson, Sr. had begun to practice tree farming, as characterized by the case of The First National Bank of Mobile vs. Wefel (252 Ala. 212 [40 So.2d 434]), on the timbered part of the McCarty Place, which practice was continued by A. Pickett Robinson until the time of his own death. Respondents Mary Cecil Reese Robinson and George Marlow Reese, Jr. cut no timber from the McCarty Place after the death of A. Pickett Robinson. The claim for waste by the cutting of timber will be disallowed."

The case cited by the trial court recognizes an exception to the general rule that a life tenant may not cut timber. The exception applies to estates which were cultivated by the settler, and this custom has continued after his death to produce salable timber where the timber is cut periodically. The case recognizes that the cutting and sale of marketable timber from timberland, done in the natural and reasonable use of the land for the purpose for which it is maintained and is available, according to the principles of good forestry, is not regarded as waste.

The evidence shows that the timber on the McCarty Place was cut in 1937 and that Eli W. Robinson, Sr., received the proceeds. There was competent testimony that about one-half of the McCarty Place has been in timber for over 40 years; that the one-half in question had never been farm land; that it had been used to grow timber for commercial sale; that A. Pickett Robinson had allowed the land to be grazed to diminish the underbrush; that A. Pickett Robinson had protected the timber and had followed the practice of selectively marking and cutting the timber to allow smaller timber to grow, and that control cutting of timber constitutes the most profitable use of this land.

The trial court heard the testimony ore tenus and we cannot say that the court abused its discretion in disallowing the claim for waste.

The decree of the trial court is due to be, in all respects, affirmed.

Affirmed.

LAWSON, COLEMAN and HARWOOD, JJ., concur.