**H. P. POUNCY, Indv. & Administrator of the Estate of Lula D. Dailey, Deceased, Appellant,**

v.

**Rosie Bell Potts GARNER, et al, Appellees.**

No. 1390.

Court of Appeals of Texas, Tyler.

Dec. 21, 1981.

Rehearing Denied Jan. 21, 1982.

Charles L. Carter, Jr., Crockett, for appellant.

William R. Pemberton, Joe E. Griffith, Chester V. Hines, Crockett, for appellees.

SUMMERS, Chief Justice.

This is an appeal from an adjudication naming the heirs at law of an intestate, Lula D. Dailey, and the distributive shares of each heir in the decedent's estate. The judgment of the trial court is affirmed.

The action originated in the County Court at Law of Houston County during the pendency of a probate proceeding styled "In Re: The Estate of Lula D. Dailey, Deceased." The appellant, H. P. Pouncy, individually and as administrator of said estate (Pouncy), filed an application to determine heirship pursuant to Sections 48 and 49 of the Texas Probate Code. Pouncy thereby sought to have himself declared the sole heir of the said Lula D. Dailey. He alleged that, under the doctrine of adoption by estoppel, he was equitably adopted by Bob and Hulda Denby (the parents of Lula D. Dailey) and that, upon Lula's death intestate he, as her equitably adopted brother, inherited the whole of Lula D. Dailey's estate. In the alternative, Pouncy prayed that the court determine the heirs of the said Lula D. Dailey and their respective shares.

In his trial pleadings appellant alleged that there was an agreement between himself, his father, Henry Pouncy, and Bob and Hulda Denby whereby the Denbys would adopt him, that he relied upon the existence of such adoptive status and performed his part as their son. Appellant also alleged that one, Mary Taylor, who was the ancestor of appellees, Mary Washington, et al (Mary Taylor heirs), was not a sister of Bob Denby and not entitled to any part of Lula D. Denby's estate.

By agreement of the parties the court submitted to the jury the issue as to whether Pouncy was equitably adopted by Bob and Hulda Denby (Special Issue No. 1) and the issues as to the relationship, if any, of Mary Taylor to Bob Denby (Special Issues Nos. 2 and 3). In the event Special Issue No. 1 was determined by the jury to be against Pouncy, the parties agreed that another hearing before the court would be had in determining the heirs of Lula D. Dailey. The jury answered all three special issues against Pouncy.

After a further hearing, the court overruled Pouncy's motions for instructed verdict and for judgment non obstante veredicto and to disregard the jury's finding to Special Issues 1 and 2. The court rendered judgment adjudicating the heirs of Lula D. Dailey and their respective shares according to the law of intestate succession and denied the application of appellant's counsel for attorney's fees allegedly rendered in connection with the prosecution of this cause. After his amended motion for new trial was overruled by operation of law, Pouncy perfected this appeal.

Appellant Pouncy predicated his appeal upon twenty-seven (27) points of error. In point 1 appellant complains of the trial court's action in allowing him only three peremptory challenges to the jury panel while it allowed three to each of the three groups of defendants (a total of 147 purported heirs referred to in groups as Defendants 1, 2 and 3 in the trial court), each group being represented by a different attorney. Appellant asserts that the court's action in the allocation of peremptory chal-

lenges was in violation of Rule 233[1] and Article 2151a.[2]

Appellees contend that the trial court correctly allocated the peremptory jury challenges because of the antagonism between the three groups of defendants; that group 1 stood to gain by a jury finding that Mary Taylor was a sister or half sister of Bob Denby; that group 2 stood to have their potential share reduced by such a jury finding; that group 3 (the unknown heirs) stood to gain by a defeat of the Mary Taylor heirs, and that groups 1 and 2 stood to gain by denying the existence of any unknown heirs.

The record herein does not reveal that appellant Pouncy made any objection whatsoever to the court's action in allocating and distributing peremptory challenges until his motion for new trial was filed. Neither did he request that the court allow him additional strikes. We have accordingly concluded, as contended by appellees, that appellant failed to timely object to the court's action and thus has waived any error of the court in the allocation and equalization of peremptory challenges. *Aetna Casualty & Surety Co. v. Shiflett*, 593 S.W.2d 768, 772 (Tex.Civ.App.—Texarkana 1979, writ ref'd n. r. e.).

The case of *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914 (Tex.1980), cited in appellant's brief is distinguishable from the case at bar. In *Patterson* there was a "timely objection" and motion by plaintiff Dunn requesting that all four defendants collectively receive the same number of peremptory challenges he was allowed.

It is ordinarily too late to complain of the jury panel or errors in the selection of the jury when the complaint, as here, is first made in a motion for new trial. 4 Tex.Jur.3rd § 97; *El Paso Electric Co. v. Whitenack*, 1 S.W.2d 594, 595 (Tex.Com. App.1928); *King v. Moberley*, 301 S.W.2d 202, 205 (Tex.Civ.App.—Eastland 1957, no writ) and authorities cited. The reason for the rule is stated in *King* at page 205, as follows:

This rule is, of course, primarily designed to prevent a party from taking his chance on a favorable verdict and then obtaining a second trial by reason of the irregularity . . .

Point 1 is overruled.

Appellant's point of error 2 complains that the trial court erred in the admission of testimony by Lucinda Houston and Bob Lee Denby regarding the marriage of Tom and Susan Denby.

Lucinda Houston and Bob Lee Denby were both appellant's witnesses. All of the testimony of Bob Lee Denby to which appellant now objects was in response to questions by appellant's counsel, and all of the testimony of Lucinda Houston to which appellant now objects (except the portion which without objection inquired about Mary Taylor being Bob Denby's sister) was also elicited by appellant's counsel.

It is the settled law of this state that a party on appeal may not object to the admission of incompetent evidence which he offered or brought out which related to an issue which he first injected into the case. Also, he may not complain of improper evidence introduced by the other side where he, himself, has introduced the same evidence or evidence of a similar character. *Hughes v. State*, 302 S.W.2d 747, 750 (Tex.Civ.App.—Eastland 1957, writ ref'd n. r. e.) and authorities cited. Appellant first injected the issue as to the marriage of Tom and Susan Denby and then offered evidence relating thereto.

Furthermore, appellant's hearsay objection, first asserted on appeal, as to the admission of testimony from the witnesses, Lucinda Houston and Bob Lee Denby, is deemed without merit. His objection was not timely made, and we believe such evidence was within the exception to the hearsay rule which permits testimony concerning declarations about pedigree and family history. *Goldman v. Campbell*, 249 S.W.2d

---

1. All references to rules are to Texas Rules of Civil Procedure unless noted otherwise.

2. All references to statutes are to Texas Revised Civil Statutes unless noted otherwise.

633, 634 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n. r. e.); *Burrell v. Westbrook*, 163 S.W.2d 695, 697 (Tex.Civ.App.—Amarillo 1942, writ ref'd w. o. m.); 2 Ray, Texas Practice, Law of Evidence, §§ 1341–1350 (3rd ed. 1980).

■ Appellant further contends that since Tom and Susan Denby were slaves and not legally married in 1852 when their purported daughter Mary (who later married French Taylor) was born, the said Mary Taylor could not have been their daughter. We deem this contention to be without merit.

Article 4609, which was in effect prior to the adoption of the Texas Family Code, validated the marriages of slaves who had lived together as man and wife until the death of one of the parties, and declared the issue of such cohabitation as legitimate. Some of the testimony of Bob Lee Denby, to which no objection has been asserted, supports the conclusion that Tom and Susan Denby lived together as man and wife until one of them died and that their marriage and issue thereof were validated under said article. Point 2 is overruled.

Points 3 through 12 all relate to the issue of whether Pouncy was adopted by Bob and Hulda Denby under the doctrine of adoption by estoppel. These points challenge (1) the court's exclusion of certain testimony claimed to pertain thereto, (2) assert that the jury's verdict on the estoppel issue (Special Issue No. 1) against Pouncy is contrary to the evidence and against the great weight and preponderance of the evidence and (3) complain that the court erred in overruling appellant's motions for judgment n. o. v. and instructed verdict relating to the adoption by estoppel question.

The record reflects that Lula D. Dailey, the decedent herein, was married only once and then to Mose Dailey, who predeceased her. There were no children born to or adopted by decedent and her husband. Lula died intestate on December 19, 1976.

Lula's mother was Hulda Benjamin Denby, who died in 1933, and her father was Bob Denby, who died in 1934. The following four children were born to Bob and Hulda Denby: Millie, Nat, Burl Ross and Lula. The three others (Millie, Nat and Burl Ross) predeceased Lula without children or descendents.

Henry Pouncy and Fronnie Benjamin Pouncy were the natural parents of H. P. Pouncy, appellant herein. Upon Fronnie Pouncy's death in 1897, appellant Pouncy at the age of three months was taken to the home of Bob and Hulda Denby where he was reared by the Denbys. They furnished him food, clothes and bed and treated him like a son. He performed the usual work expected to be done around their farm.

Appellees contend that these points (3–12) are all immaterial and should be overruled, because even if Pouncy had been equitably adopted by Lula D. Dailey's parents, Bob and Hulda Denby, he (Pouncy) would not have inherited from Lula D. Dailey as her adopted brother. We agree.

In *Heien v. Crabtree*, 369 S.W.2d 28 (Tex. 1963), the Supreme Court held that an "equitable adoption" and "adoption by estoppel" does not establish a status of parent and child, as does a legal adoption, with the legal consequences of a statutory adoption.

■ It is settled law that an adoption by estoppel is binding upon the adoptive parents and their privies. *Jones v. Guy*, 135 Tex. 398, 143 S.W.2d 906; 36 Texas L.Rev. 30 (1958). "Privity," as here used, is the *legal relationship between parties incident to succession* on the part of one party [heirs of Lula D. Dailey] to an estate or interest formerly held by the other [Lula D. Dailey]. 1 Freeman on Judgments § 438; 72 C.J.S. Privity p. 954 *et seq.*; 34 Tex.Jur.2d Judgments § 402; *Asbeck v. Asbeck*, 362 S.W.2d 891, 893 (Tex.Civ.App.—Texarkana), affirmed 369 S.W.2d 915 (Tex.1963). Appellant Pouncy is *not* seeking to recover a share of the estate of Bob and Hulda Denby; instead, he is seeking to inherit the estate of Lula D. Dailey as her equitably adopted brother on the grounds that her parents were estopped to deny such adoption.

Under adoption by estoppel, only the adoptive parents and their privies are estopped to deny the adoption. The estoppel to deny the adopted status does not operate or work against collateral kindred not in privity with the adoptive parents. A child adopted by estoppel does not inherit from collateral kindred, as there is no privity of estate between such kindred and the adoptive parents. *Asbeck v. Asbeck, supra.*

In the instant case, when Lula D. Dailey died intestate in 1976, the law of descent and distribution vested the title of Lula's estate in the living descendents of the brothers and sisters of her parents, Bob Denby and Hulda Benjamin Denby. Tex. Prob.Code Ann. §§ 337, 38 subd. (a) par. 3. No part of Lula's estate descended or vested in her then deceased parents. It follows that as none of Lula's heirs at law take an interest in the Lula D. Dailey estate in succession to Bob and Hulda Denby, there can be no privity of estate between Lula's heirs and the Denbys.

The principles enunciated in *Hein* and *Asbeck* are applicable to this case. Thus, even if Pouncy had established that he was adopted under the estoppel doctrine by the Denbys, he would not inherit from Lula as her equitably adopted brother. There would be no privity of estate between Lula's heirs at law and the Denbys, and estoppel would not operate against her heirs. Points 3 through 12 are overruled.

Points 13 through 23 challenge the legal and factual sufficiency of the evidence to support the jury's finding on the Mary Tyler issue.

Special Issues 2 and 3, together with the jury's answers thereto, read as follows:

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the Mary who married French Taylor was not a sister or half-sister of Bob Denby?

Answer "We do" or "We do not."

Answer: We do not.

If you have answered Special Issue No. 2 "We do not," and only in that event, then answer:

### SPECIAL ISSUE NO. 3

Do you find that her relationship was that of a sister or half sister of Bob Denby?

Answer: "Sister" or "Half sister."

Answer: "Half Sister."

Point 23 attacks the jury's finding to Special Issue 2; the other points fail to specify the finding challenged and will likewise be construed as leveled at the jury's finding in answer to the basic issue, namely, Special Issue 2.

Points 13, 14 and 15 complain that there is no evidence (Point 13) or the evidence is factually insufficient to support the jury's finding (Point 15) and that the finding is against the great weight and preponderance of the evidence (Point 14).

Appellant in points 16, 18 and 19 asserts that the court erred in overruling appellant's motion for instructed verdict, and in points 20, 21 and 22 that the court erred in overruling appellant's motion for judgment non obstante veredicto, each on the grounds of no evidence, or the evidence is factually insufficient to support the jury's finding and the finding is against the great weight and preponderance of the evidence. These points will all be considered as "no evidence" points. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 362 (1960).

Point 17 complains that the court erred in failing to grant appellant's motion for instructed verdict because the evidence is conclusive that appellant is entitled to a finding that Mary Taylor was not a sister or half sister of Bob Denby as a matter of law.

Point 23 asserts that the evidence is factually insufficient (as hearsay) to support the jury's finding to Special Issue 2.

Where, as here, a jury returns a negative answer to an issue upon which the proponent has the burden of proof, the jury's negative answer need not be supported by affirmative evidence. Therefore, it avails the complaining party nothing to assert that a negative answer is without

support in the evidence or is not supported by factually sufficient evidence. Under these circumstances, the complaining party is placed in the position of having to contend that the evidence establishes the issue as a matter of law. See Calvert, supra at 363; *Bell v. Buddies Super Market*, 516 S.W.2d 447, 451 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.); *Ross v. Sher*, 483 S.W.2d 297 (Tex.Civ.App.—Houston 1972, writ ref'd n. r. e.); *Smith v. Safeway Stores, Inc.*, 433 S.W.2d 217, 218 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). Appellant's "no evidence" points (13, 16, 18, 19, 20, 21 and 22) and "factually insufficient" evidence points (15 and 23) are overruled.

Appellant's other points (17 and 14) nevertheless require a review of all the evidence in the record. Such review is made to determine whether an affirmative response to Special Issue 2 was established as a matter of law or whether the jury's answer is so against the great weight and preponderance of the evidence as to be manifestly wrong. We do not so conclude. Appellant's witness, Lucinda Houston, testified without objection that Bob Denby's first wife was her father's sister; that Mary Taylor was a sister of Bob Denby; that Mary was a yellow woman, a white woman with long "reddish hair"; that she was short and married to French Taylor. Bob Lee Denby, also appellant's witness and Bob Denby's grandson, testified without objection that Mary Taylor was the half-sister of Bob Denby, that she and Bob Denby had the same mother and Mary's father was Burt Leveton, a white man from Grapeland, Texas. Wesley Fobbs, a daughter of French Taylor by his second wife, testified that her father told her that his previous marriage was to Mary Leveton Taylor. Appellant Pouncy testified Mary Taylor was not one of Bob Denby's sisters and that his "daddy" told him she was a Leveton. Mary Washington, a granddaughter of Mary Taylor, testified that her mother (Mary Taylor's daughter) and French Taylor (her grandfather and Mary Taylor's husband) both told her that the relationship of Bob Denby and Mary Taylor was that of brother and sister. Josie Lee Bell, also a granddaughter of Mary Taylor, testified that she was told by her mother (Mary Taylor's daughter), as well as by French Taylor (her grandfather and Mary's husband) that Bob Denby and Mary Taylor were brother and sister. The testimony of Mary Washington and Josie Lee Bell was properly admitted by the court under the hearsay exception for declarations concerning pedigree and family history. Points 13 through 23 are overruled.

Appellant asserts in Point of Error 24 that the court erred in refusing to admit into evidence the partial statement of facts (also referred to as a deposition in his brief) of the testimony of Heard King Ward taken on September 14, 1977, by the court reporter before the county court at law judge then in office.

The case had been set for a non-jury trial to begin on September 14, 1977. On that date trial of the cause was continued for a jury setting because a timely demand and payment of the statutory jury fee had been made by the Mary Taylor defendants. The other two groups of defendants were not represented on that date; the only attorneys present were counsel for Pouncy and the Taylor defendants. Over the objection of counsel for the Taylor defendants, the trial court proceeded to order that the parties present participate in the taking of a deposition for the preservation of the testimony of one Heard King Ward who was then 101 years old. Counsel for the Taylor defendants objected on the grounds of no notice as provided by the rules and no commission had issued for the deposition of this witness. Twelve days prior to the subsequent jury trial which began on March 26, 1979, Pouncy's counsel filed the reporter's transcription of the purported partial statement of facts or deposition with a written notice of filing. A copy of the notice of filing was mailed or delivered to counsel for all defendants except the attorney for the unknown heirs. At trial appellant offered the purported partial statement of facts or deposition into evidence only against the Taylor defendants, which offer was refused by the court. The document offered con-

tained the objection (reduced to writing) made by counsel for the Taylor defendants at the time the so-called deposition was taken and reasserted at trial. It bore the certificate of the reporter and the approval only of Pouncy's counsel and the County Court at Law Judge who ordered its taking but who was no longer in office as such judge when he purported to approve same.

Whether considered as a partial statement of facts or as a deposition, we believe it was properly excluded by the trial court. Furthermore, the instrument did not contain testimony pertaining to the Mary Taylor issues, but only to the issue of adoption by estoppel. In view of our ruling on the adoption by estoppel question, such testimony would be immaterial and its exclusion could not result in reversible error. Point 24 is overruled.

 The appellant by two points of error complains of argument of opposing counsel as being improper and reasonably calculated to cause and did cause harm. Point 25 complains of argument by counsel for the Mary Taylor heirs. Point 26 complains of argument by counsel for the unknown heirs. In *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979), the Supreme Court stated:

> In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. 3 McDonald, Texas Civil Practice § 13.-17.2 (1970). There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely

examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. *Aultman v. Dallas Ry. & Term. Co.*, 152 Tex. 509, 260 S.W.2d 596 (1953). Rules 434, 503, Tex.R.Civ.P.

No objection was made to the argument in point 25 at the time of trial. The only objection made to the argument in point 26 was, "Judge, that's outside the evidence"; and the court thereupon instructed the jury: "All right, Ladies and Gentlemen of the jury, argument outside of the record. You will remember what the witnesses said and you will be governed thereby." There was no motion to instruct and no motion for mistrial as to either of the two arguments. Some of the argument about which Pouncy now complains was invited in his counsel's opening argument. Appellant's counsel had the opportunity to reply and did so in his closing argument.

It is our opinion that Pouncy, by failing to object and press for an instruction at the time of the argument, waived his complaint. *Standard Fire Ins. Co. v. Reese*, supra; *Turner v. Turner*, 385 S.W.2d 230, 237 (Tex.1964). In *Younger Brothers, Inc. v. Myers*, 324 S.W.2d 546, 550 (Tex.1959), the Supreme Court has said:

> During the heat of trial extravagant and ill-considered statements are often made. The prejudice resulting from such remarks can generally be removed by an admonition to the jury from the presiding judge and we are unwilling to accede to the proposition that juries pay little or no attention to the instructions of trial judges.

In looking at the whole record, we conclude that the jury carefully considered its

verdict and the evidence. The probabilities are that the jury would have reached the same conclusion from the evidence without regard to the argument about which appellant now complains. Points 25 and 26 are overruled.

In point of error 27 appellant complains that the court erred in denying his application to expend funds of the estate to pay his counsel attorney's fees in the amount of $4,250 and $152.91 in expenses allegedly incurred for routine estate representation and for prosecuting the first amended application to determine heirship.

Section 242 of the Texas Probate Code allows the personal representatives of estates necessary and reasonable expenses incurred by them in the preservation, safekeeping, and management of the estate, including reasonable attorney's fees.

The record reveals that the trial court had previously approved two applications of Pouncy as administrator to expend funds of the estate in payment of expenses (including attorney's fees for routine representation of the estate and for prosecuting the application to determine heirship). This suit, and this appeal, are brought by H. P. Pouncy, individually and as administrator of the estate. In denying this third application for expenditure of estate funds, the trial court impliedly found that, under the proof adduced, there was no satisfactory segregation of expenses incurred by Pouncy for his individual benefit and for the estate, and that the claim of appellant's attorney for $4,250 in attorney's fees and $152.91 in expenses were not reasonable and necessary expenditures for the preservation, safekeeping and management of the estate. Point 27 is overruled.

The judgment of the trial court is affirmed.