Barbara Fisk POPE as Next Friend of Michael Fisk, Appellant,

v.

FIRST NATIONAL BANK IN DALLAS, Trustee for the Ruby L. Kiest, Trust, Dian Hays Pingree, and Linda Pope Narby Branch, Appellee.

No. 05–82–00499–CV.

Court of Appeals of Texas, Dallas.

Sept. 7, 1983.

William Andress, Dallas, for appellant.

Robert C. Johnson, Johnson, Blakely, Johnson, Smith & Abby, Dallas, for appellee.

Before STEPHENS, SPARLING and VANCE, JJ.

SPARLING, Justice.

Appellant, Barbara Pope, as next friend of her son, Michael Fisk, sued appellees, First National Bank, Dian Hays Pingree and Linda Pope Narby Branch, seeking the benefits of a trust. First National was trustee of the disputed trust until its termination by the death of Joe Pope—the beneficiary of the trust. Upon termination, the corpus of the trust was deposited to the account of two additional trusts in which Pingree and Branch are the beneficiaries. A jury determined that Michael Fisk was not the adopted son of Joe Pope. Mrs. Pope claimed that Fisk was Joe Pope's son—and beneficiary—under the doctrine of adoption by estoppel. In three points of error, appellant alleges that the jury's verdict is against the great weight and preponderance of the evidence. Appellee avers by counterpoint that even if Michael Fisk was the son of Joe Pope under the theory of adoption by estoppel, that appellees are not bound by the adoption. We agree with appellee's counterpoint and accordingly affirm.

The trust in dispute was established by the will of Ruby L. Kiest for the benefit of her nephew, Joe Pope. Ruby Kiest also bequeathed two trusts for the benefit of her nieces, appellees Pingree and Branch. Joe Pope's trust provided that upon his death the income from the trust should be paid to his descendants. It further provided that if Joe Pope should die with no descendants the trust would terminate and all of the funds in the trust would be delivered to the trustee to be equally divided between the Pingree and Branch trusts.

Joe Pope, at the time of his death on February 7, 1976, was living with Barbara Fisk Pope and her son, Michael Fisk. Barbara Pope alleged that while she lived with Joe Pope, he agreed to adopt Michael Fisk and that Michael Fisk gave Joe Pope love and affection in reliance on this promise.

The descriptive phrase, "adoption by estoppel," is a shorthand method of saying that because of the promises, acts and conduct of an intestate deceased, those claiming under and through him are estopped to assert that a child was not legally adopted or did not occupy the status of an adopted child. *Heien v. Crabtree,* 369 S.W.2d 28, 30 (Tex.1963). The doctrine has long been recognized by Texas courts. *E.g., Cubley v. Barbee,* 123 Tex. 411, 73 S.W.2d 72 (1934); *Cheney v. Coffey,* 131 Tex. 212, 113 S.W.2d 162 (1938); *Jones v. Guy,* 135 Tex. 398, 143 S.W.2d 906 (1940). This doctrine is also recognized by statute. The Probate Code defines "child" as: "includes an adopted child, whether adopted by any existing or former statutory procedure *or by acts of estoppel,*" Tex.Prob.Code Ann. § 3(b) (Vernon 1980) (Emphasis supplied). Texas case law teaches that adoption by estoppel prevents only the adoptive parent and those in *privity* with him from denying the adoption. *Jones v. Guy,* 135 Tex. 398, 143 S.W.2d 906 (1940); *Pouncy v. Garner,* 626 S.W.2d 337, 341 (Tex.App. Tyler 1981, writ ref'd n.r.e.). *See Heien v. Crabtree,* 369 S.W.2d 28, 31 (Tex.1963), *Asbeck v. Asbeck,* 362 S.W.2d 891, 893 (Tex.Civ.App. Texarkana) *aff'd* 369 S.W.2d 915 (Tex.1963).

"Privity," is defined as the legal relationship between parties incident to succession on the part of one party to an estate or interest formerly held by the other. Further, under adoption by estoppel, only the adoptive parents and their privies are estopped to deny the adoption. The estop-

pel to deny the adopted status does not operate or work against collateral kindred not in privity with the adoptive parents. A child adopted by estoppel does not inherit from collateral kindred, as there is no privity of estate between such kindred and the adoptive parents. *Poucy v. Gardner,* 626 S.W.2d at 341, 342 *citing* Freeman on Judgment § 438; 72 C.J.S. *Privity* (1951), 34 Tex.Jur.2d *Judgments* § 402 (1962); *Asbeck v. Asbeck,* 362 S.W.2d at 893.

■ In the present case, the alleged adoptive parent, Joe Pope, is dead and his estate is not an issue in this action. The corpus of the disputed trust did not pass by or through the estate of Joe Pope, it merely passed on the occasion of the death of Joe Pope. Thus, Michael Fisk, even if adoption by estoppel was proved, could not recover against any of the appellees because they were not in privity with Joe Pope.[1] We therefore hold that as a matter of law Michael Fisk is not entitled to recover under the doctrine of adoption by estoppel.

All points of error are overruled. Appellee's counterpoint number one is sustained, and the judgment is affirmed.

STEPHENS, Justice.

I concur in the result reached by the majority because I believe there is sufficient evidence to support the jury's verdict that Joe Pope did not adopt Michael Fisk. I cannot agree, however, that the jury's verdict is irrelevant in deciding whether Michael would inherit as Joe's son.

The majority would rely on *Poucy v. Garner,* 626 S.W.2d 337 (Tex.App.—Tyler 1981, writ ref'd n.r.e.) for its holding. Such reliance is misplaced, for in my view *Poucy* was wrongly decided. In holding that a child adopted by estoppel does not inherit from collateral kindred, *Poucy* relies on the general language found in *Heien v. Crabtree,* 369 S.W.2d 28 (Tex.1963) that adoption by estoppel is not the same as legal adoption, nor does it have all of the legal consequences of a statutory adoption.

A review of the doctrine's history reveals that this general language is taken out of context and should not apply to the facts at hand.

In one of the earliest cases on the subject, *Cubley v. Barbee,* 123 Tex. 411, 73 S.W.2d 72 (1934), the supreme court was presented with evidence of a deed of adoption, executed between the natural mother and the adopting parents. The adopted child sought to inherit from the adopting mother, who died intestate. The mother's natural grandchildren contested the claim, asserting that the deed of adoption had never been properly filed, as required by law.

In response to this contention, the supreme court stated that "the above representations [of the adopting mother] were, we think, representations of fact in this case, and their correctness cannot now be denied by the defendants in error for the reason that they hold in privity with and through Mrs. Thyng [the adopting mother], who would be estopped to deny the existence of the state of facts as represented by her, if she were a party to this litigation." *Cubley,* 73 S.W.2d at 79.

After noting that many jurisdictions granted relief in these cases by decrees of specific performance, the court concludes: "However, we are of the opinion that the real classification of the remedy is that of estoppel .... However, the technical classification here is of no consequence. The defendants in error are plainly estopped from asserting the invalidity of the deed of adoption and from asserting that such deed was not in fact filed as required by the statute." *Id.* at 83.

Thus, the doctrine originated as a true estoppel, i.e., the adopting parents (and their privies) were estopped to deny their own words, as conclusively proved through the executed agreement. However, the doctrine was soon extended to cases in which no written agreement was executed. In *Jones v. Guy,* 135 Tex. 398, 143 S.W.2d

---

1. We do not conclude, as the concurrence infers, that a child adopted by acts of estoppel would *not* "inherit from and through his intestate adoptive parents the same as would a natural child."

906 (1940), the court stated that "the doctrine of equity upon which decision in the *Cubley* case was based does not rest upon execution of the adoption deed. It rests upon the adoptive parent having received the benefits of the relation fully performed by the child." *Id.* 143 S.W.2d at 909.

In making an oral "agreement" between the parent and child the basis for an estoppel, the court fails to make clear what, in the absence of a written document, the parent's privies are "estopped" to deny. Certainly, neither those in privity with the adopting parents nor anyone else would be prevented from contesting the sufficiency of the child's proof of his adopted status? Moreover, *Jones* made clear that "an adopted child does not inherit property in virtue of the status of an adopted child alone but depends upon the intestacy of the adoptive parent, together with the statutes of descent and distribution .... [T]he status of an adopted child with respect to the property of the adoptive parent is the same as that of the parent's own children." *Id.* 143 S.W.2d at 910, *citing Masterson v. Harris,* 107 Tex. 73, 174 S.W. 570 (1915).

The doctrine of adoption by estoppel was further strained in *Cavanaugh v. Davis,* 149 Tex. 573, 235 S.W.2d 972 (1951). In *Cavanaugh,* the need for even an express oral agreement to adoption was relaxed in favor of proving the agreement through circumstantial evidence, i.e., the acts and conduct of the adopting parent. *Id.* 235 S.W.2d at 977. Under such circumstances, if we are to accept the doctrine literally, those in privity with the adopting parents would be estopped to deny the acts and conduct of the parents. As impractical as this proposi-

tion appears, no rationale is offered to explain why such public acts, in contrast to a private written agreement, would be binding only on those in privity with the parents.

It is in reference to these three cases, *Cubley, Jones* and *Cavanaugh,* that the supreme court later stated that "analysis of the cited cases makes clear that we did not intend to hold, and did not hold, that 'equitable adoption' or 'adoption by estoppel' is the same as legal adoption or that it has all of the legal consequences of a statutory adoption." *Heien,* 369 S.W.2d at 30. However, the absence of such a broad holding provides no reason for concluding the opposite, i.e., that they are different, nor do the cases suggest how they do differ.[1] Although *Heien* is distinguishable on its facts from the case before us, it nevertheless sets the dangerous precedent of ignoring the clear statutory mandate contained in the Probate Code, the pertinent sections of which read:

§ 3. Definitions and Use of Terms

When used in this Code, unless otherwise apparent from the context:

(b) "Child" includes an adopted child, whether adopted by an existing or former statutory procedure or *by acts of estoppel,* but, unless expressly so stated herein, does not include an unrecognized, illegitimate child of the father.

§ 40. Inheritance By and From an Adopted Child

For purposes of inheritance under the laws of descent and distribution, an adopted child shall be regarded as the child of the parent or parents by

---

1. *Jones* notes only that the rights of heirs of an adopted child "seem to be different" to "the rights of heirs of a natural child." 143 S.W.2d at 910, citing *Harle v. Harle,* 109 Tex. 214, 204 S.W. 317 (1918). This is, of course, true, since by statute a natural parent cannot inherit from its child when that child has been adopted by another. Furthermore, the *Harle* decision rested upon an opinion that the word "child" in former article 2469 of the descent and distribution statutes did not include adopted children. As will be seen, the legislature has now corrected this. One other possible difference is pointed out in Bailey, *Adoption "By Estoppel,"* 36

Tex.L.Rev. 30, 36 n. 23 (1957). However, that distinction lies in the classifications drawn in the inheritance tax statute, former article 7122. In *Heien,* however, the court held that the legal status of parent and child is not created by an equitable adoption, choosing to ignore statutory language which stated that a child adopted by acts of estoppel inherited "as if such child were the natural legitimate child." *Heien* involved parents who were seeking to inherit from their predeceased adopted child, and as such should be distinguished from the present case.

adoption, such adopted child and its descendants inheriting from and through the parent or parents by adoption and their kin the same as if such child were the natural legitimate child of such parent or parents by adoption, and such parent or parents by adoption and their kin inheriting from and through such adopted child the same as if such child were the natural legitimate child of such parent or parents by adoption. The natural parent or parents of such child and their kin shall not inherit from or through said child, but said child shall inherit from and through its natural parent or parents. Nothing herein shall prevent any parent by adoption from disposing of his property by will according to law. *The presence of this Section specifically relating to the rights of adopted children shall in no way diminish the rights of such children, under the laws of descent and distribution or otherwise, which they acquire by virtue of their inclusion in the definition of "child" which is contained in this Code.* [emphasis added].

I would conclude from a reading of this statute that a child adopted by acts of estoppel would inherit from and through his intestate adoptive parents the same as would a natural child. The supreme court having not decided this precise issue,[2] we are not bound by it to presume that a child adopted by estoppel is a second class citizen under the laws of descent and distribution, anymore than we are bound to presume, under the earlier language of *Jones v. Guy,* that such a child is equal to a natural child in these cases. Thus, I believe the Court of Appeals in *Pouncy* was wrong in extending this dubious distinction, and I would not find that decision controlling.

---

**2.** Although it did state quite the contrary by way of dictum in a case decided twenty years ago. *See Asbeck v. Asbeck,* 369 S.W.2d 915, 916 (Tex.1963).