344 S.E.2d 201

FIRST NATIONAL BANK IN FAIR-
MONT, as Administrator of the Person-
al Estate of James R. McHenry, Jr.,
Deceased

v.

Martha Jane PHILLIPS, James Thorn-
hill, Margaret Gregory, Betty Shamblin,
and Sandra Boyd Showell.

No. CC 951.

Supreme Court of Appeals
of West Virginia.

Nov. 1, 1985.

Dissenting Opinion May 16, 1986.

. . ."

Philip C. Petty, Fairmont, for appellant.

C.V. Critchfield, Furbee, Amos, Webb &
Critchfield, Fairmont, for appellees Phil-
lips, Gregory, Thornhill & Showell.

Ben B. White, III, Princeton, for appellee
Shamblin.

McHUGH, Justice:

In this case we are asked to decide the
scope of the doctrine of equitable adoption.

Having denied a motion to dismiss filed
by the defendants except for Betty Shamb-
lin, the Circuit Court of Marion County,
West Virginia [hereinafter, "the trial
court"], upon its own motion and upon the
joint application of the parties, certified the
following question to this Court [1]: is the
doctrine of equitable adoption as set forth
in *Wheeling Dollar Savings & Trust Co. v.
Singer*, 162 W.Va. 502, 250 S.E.2d 369
(1978), applicable only as between adoptive

---

1. The question was certified pursuant to *W.Va.*   *Code,* 58–5–2 [1967] and *W.Va.R.App.P.* 13.

parent and adoptive child for the purpose of inheritance, and conversely not applicable as between adoptive child and those claiming through the adopting parent? The trial court answered this question in the negative. We agree with respect to the right of an equitably adopted child to inherit from another child of the adoptive parent.

According to the pleadings the facts are as follows. James R. McHenry, Jr. [hereinafter, "the decedent"] died intestate on July 21, 1983, survived only by five first cousins, the named defendants herein. At the time of his death the decedent owned no real property but did own certain personal property. The plaintiff, the First National Bank in Fairmont, as the duly appointed administrator of the decedent's personal estate, brought this declaratory judgment proceeding pursuant to *W.Va.Code*, 55-13-4 [1941][2] to determine the beneficiaries of the decedent's estate and their respective distributive shares. According to the complaint and in her separate answer, Ms. Shamblin, one of the defendants, alleges that she, in addition to being a first cousin of the decedent by blood, had been equitably adopted by the decedent's parents and, thus, as the "sister" of the decedent by equitable adoption, was the next of kin and sole beneficiary of the decedent's personal estate.[3]

The other defendants moved to dismiss the action on the ground that equitable adoption, even if in fact established, would operate as a matter of law only as between Betty Shamblin and the decedent's parents, and not as between Betty Shamblin and the other defendants, who, along with Ms. Shamblin, are the next of kin of the decedent under this view of the law.

The trial court denied the motion to dismiss. While finding some merit to the

contention that the love and affection between an equitably adopted child and the adoptive parent should not be presumed to exist also as between the equitably adopted child and the natural children of the adoptive parent, the trial court, based upon language in *Singer, supra,* concluded that an equitably adopted child is a "family member" and, thus, may inherit as a sibling. The trial court certified the question to us because *Singer* did not directly address such a factual situation.

## I. *Singer*

■ To answer the certified question it is important to analyze *Singer* first. *Singer* involved a testamentary trust, with income for life to the niece of the testatrix; upon the niece's death the principal was to be distributed to the niece's children, and if none survived her, the principal was to be distributed to the testatrix's heirs. Ms. Singer (not related by blood to the testatrix) claimed to be the "child" of the niece based upon her belief that she had been formally (legally) adopted by the niece of the testatrix. This Court remanded the case to the trial court for an evidentiary hearing to determine whether Ms. Singer had been equitably adopted by the niece of the testatrix, for if she could prove equitable adoption she would be entitled as the niece's "child" to the principal of the trust, to the exclusion of the testatrix's heirs. Syl. pt. 2 states the holding in *Singer* concerning equitable adoption:

The doctrine of equitable adoption is hereby incorporated into the law of West Virginia, but a litigant seeking to avail himself of the doctrine in a dispute among private parties concerning trusts or the descent of property at death must prove by clear, cogent, and convincing evidence that he has stood from an age of tender years in a position exactly

---

**2.** *W.Va.Code,* 55-13-4 [1941] provides in pertinent part:

Any person interested as ... an ... administrator ... in the administration ... of the estate of a decedent ... may have a declaration of rights or legal relations in respect thereto:

(a) To ascertain any class of ... heirs, next of kin or others; or

(b) To direct the ... administrators ... to do or abstain from doing any particular act in their fiduciary capacity; or

(c) To determine any question arising in the administration of the estate, ...

**3.** See *W.Va.Code,* 42-2-1 [1931] and *W.Va.Code,* 42-1-1(d) [1957] for the intestate distribution of personalty to a sibling as the next of kin.

equivalent to that of a formally adopted or natural child[.]

It was noted at the outset in *Singer* that the earlier decision in *Wheeling Dollar Savings & Trust Co. v. Hanes*, 160 W.Va. 711, 237 S.E.2d 499 (1977), recognizes that adoptions are more pervasive and concerns with "bloodline" less pervasive in modern society than in the early part of this century and, consequently, the exclusion of an adopted child from the definition of "child," "heirs," or the like may no longer be accomplished by implication. *Singer, supra,* 162 W.Va. at 507, 250 S.E.2d at 372–73.

This Court then phrased the issue in *Singer*:

> Since *Hanes* clearly established the right of adopted children to be treated as natural children, the only remaining question presented in the case before us is whether adherence to formal adoption procedures, *W.Va.Code,* 48–4–1 [1969] *et seq.* [revised in 1984] is the exclusive method by which a person may be accorded the protections of adoptive *status* in West Virginia. We find that it is not.

162 W.Va. at 507–08, 250 S.E.2d at 373 (emphasis added).

In several other portions of *Singer* this Court also referred to the status or position of the equitably adopted child. For example, the Court refused to follow the rationale of most of the cases from other jurisdictions which "predicate the finding of an equitable adoption on the proof of an expressed or implied contract of adoption.... [A]n implied contract of adoption is an unnecessary fiction created by courts as a protection from fraudulent claims." 162 W.Va. at 509–10, 250 S.E.2d at 374. To protect against fraudulent claims, this Court imposed a demanding burden of proof:·

> We find that if a claimant can, by clear, cogent and convincing evidence, prove sufficient facts to convince the trier of fact that his *status* is identical to that of ·

a formally adopted child, except only for the absence of a formal order of adoption, a finding of an equitable adoption is proper without proof of an adoption contract.

162 W.Va. at 510, 250 S.E.2d at 374 (emphasis added). Again, in discussing the burden of proof, reference to status or position of the equitably adopted child is made: "The equitably adopted child in any private property dispute ... involving the laws of *inheritance* or *private trusts* [emphasis in original; footnote omitted] must prove by clear, cogent and convincing evidence that he has stood from an age of tender years in a *position* [emphasis added] *exactly* [emphasis in original] equivalent to a formally adopted child." 162 W.Va. at 508–09, 250 S.E.2d at 373.

Moreover, the status or position of the equitably adopted child was not artificially limited to that of being a "child" but was recognized to be that of a "family member," just as a natural child or formally adopted child would be:

> Our family centered society presumes that bonds of love and loyalty will prevail in the distribution of family wealth along family lines, and only by affirmative action, *i.e.*, writing a will, may this presumption be overcome. An equitably adopted child in practical terms is as much a *family member* as a formally adopted child and should not be the subject of discrimination.

162 W.Va. at 508, 250 S.E.2d at 373 (emphasis added).[4]

Finally, *Singer* sets forth several indicia of equitable adoption: love and affection between the person and his or her allegedly adoptive parent(s); the child's performance of services for the parent; the surrender of ties by the natural parent; the society, companionship and filial obedience of the child; an invalid or ineffectual adoption proceeding; reliance by the adopted person upon the existence of his adoptive status; the representation to all the world that the

---

**4.** Similarly, this Court in *Wheeling Dollar Savings & Trust Co. v. Hanes*, 160 W.Va. 711, 718–19, 237 S.E.2d 499, 503 (1977), quoting *In re Estate of Coe*, 42 N.J. 485, 492, 201 A.2d 571, 575 (1964), observed that strangers to an adoption normally do not differentiate or discriminate between a natural child and an adopted child of another but, instead, view the relationship precisely as the parent would.

child is a natural or adopted child; and the rearing of the child from an age of tender years by the adopting parents. 162 W.Va. at 509, 250 S.E.2d at 373–74.

## II. *Inheritance from child of adoptive parent*

The above analysis of *Singer* indicates that its language speaks to the issue presented here: may an equitably adopted child inherit as a brother or sister from another child of the equitably adoptive parent? We hold that he or she may so inherit.

It is significant that in *Singer* the property in question, the principal of the testamentary trust, would pass directly from the testatrix (the aunt) to the equitably adopted child of the testatrix's niece (the lifetime·income beneficiary), not to the equitably adopted child of the testatrix. Thus, *Singer* involved a person making a property claim through, not from, the adoptive parent. The principal was never owned by the adoptive parent but would pass from a stranger to the equitable adoption to the adoptee as a "child" of the income beneficiary. This Court did not discuss the lack of "privity of estate," as some of the cases do to defeat the equitably adopted child's property claim as against persons other than the adoptive parent(s). *See generally* annot., 97 A.L.R.3d 347 (1980 and Supp.1985), entitled "Modern Status Of Law As To Equitable Adoption Or Adoption By Estoppel," especially §§ 4, 19 and 27.

*Singer,* unlike *Pouncy v. Garner,* 626 S.W.2d 337 (Texas Ct.App. Tyler Dist.1981), *writ ref'd n.r.e.; In re Estate of Olson,* 244 Minn. 449, 70 N.W.2d 107 (1955); and other cases relied upon by the cousins contesting Ms. Shamblin's claim, is not predicated upon the specific performance of an implied contract to adopt, nor is *Singer's* rationale dependent primarily upon an estoppel theory (binding only against the adoptive parents and their "privies"). Underlying such machinations of equity is the fear of fraudulent claims. *Singer* addresses that potential problem by requiring the highest possible standard of proof in a civil case, specifically, clear, cogent and convincing evidence of the alleged equitable adoption. *Singer* applies a *de facto*, lifetime-family-member rationale, and expressly holds that the statutory adoption procedure is not the exclusive method of obtaining adoptive *status.*

This judicial recognition of the equitably adopted child's having the same status for the purpose of inheritance from another child of the adoptive parent as a formally adopted child would have is like that legislatively recognized in the State of Texas. *Tex.Prob.Code Ann.* § 3(b) (Vernon 1980) defines "child" to include "an adopted child, whether adopted by any existing or former statutory procedure *or by acts of estoppel,* ..." (emphasis added). Section 40 of the *Texas Probate Code* provides that an adopted child shall inherit from and through the adoptive parent(s) and their kin the same as if such child were the natural legitimate child of the adoptive parent(s), and the adoptive parent(s) and their kin shall inherit from and through such adopted child as if such child were the natural legitimate child of the adoptive parent(s). The well reasoned concurring opinion in *Pope v. First National Bank,* 658 S.W.2d 764 (Tex.Ct.App. Dallas Dist.1983), states that *Pouncy v. Garner, supra,* was decided incorrectly because it ignored the clear provisions of the *Texas Probate Code.*

*W.Va.Code,* 48–4–11(b) [1984] [5] is almost identical to § 40 of the *Texas Probate*

5. *W.Va.Code,* 48–4–11(b) [1984] provides in its entirety as follows:

(b) For the purpose of descent and distribution, from and after the entry of such order of adoption, a legally adopted child shall inherit from and through the parent or parents of such child by adoption and from or through the lineal or collateral kindred of such adopting parent or parents in the same manner and to the same extent as though said adopted

child were a natural child of such adopting parent or parents, but such child shall not inherit from any person entitled to parental rights prior to the adoption nor their lineal or collateral kindred, except that a child legally adopted by a husband or wife of a person entitled to parental rights prior to the adoption shall inherit from such person as well as from the adopting parent. If a legally adopted child shall die intestate, all property,

*Code.* It provides, *inter alia,* that an adopted child inherits from the lineal kindred of the adoptive parent(s). Since *Singer* requires non-discriminatory treatment of an equitably adopted child, the latter inherits from the lineal kindred of the adoptive parent(s).[6]

■ If an equitable adoption is established by clear, cogent and convincing evidence, the equitably adopted child would inherit from another child of the adoptive parent under *W.Va.Code,* 48-4-11(b) [1984], which provides that an adopted child inherits "from ... the lineal ... kindred of such adopting parent or parents in the same manner and to the same extent as though said adopted child were a natural child of such adopting parent or parents, ..."

Having answered the certified question, we dismiss this case from the docket of this Court.

Certified question answered; case dismissed.

BROTHERTON, Justice, dissenting:

I respectfully dissent from the majority opinion, which allows inheritance by an equitably adopted child from a natural child of the equitably adoptive parents. The doctrine of equitable adoption, as interpreted by this Court in *Wheeling Dollar Savings & Trust Co. v. Singer,* 162 W.Va. 502, 250 S.E.2d 369 (1978), is a legal recognition of the strong bonds of love and affection created on occasion between an unrelated "parent" and "child" without a formal adoption proceeding. Because the equitable adoption doctrine is based on the lineal relationship between parent and child I do not believe that its legal effect should be extended to allow inheritance "through" the parent as well as "from" the parent.

It is important to remember that the common law of this country did not recognize the concept of adoption. The right to

adopt and the legal consequences of an adoption were controlled exclusively by statute. 2 Am.Jur.2d *Adoption* § 1, *et seq.* (1962); 14A Michie's Jurisprudence *Parent and Child* § 27 (1978). Our decision in *Singer,* recognizing the concept of equitable adoption, made a limited change in the common law to permit a person to inherit from that person's equitably adoptive parent. We stressed in Syllabus Point 2 of *Singer* that such an individual "must prove by clear, cogent, and convincing evidence that he has stood from an age of tender years in a position exactly equivalent to that of a formally adopted or natural child."

I can see no good policy reason for extending *Singer* beyond its facts and further changing the common law to permit an equitably adopted child to inherit from the siblings of the equitably adoptive parents.

The majority to justify its decision in this case places undue emphasis on certain facts in *Singer* in an attempt to broaden its holding. I do not find the majority's efforts to distinguish cases from other jurisdictions persuasive. In fact, from my reading of the legal annotation cited by the majority, I question whether any other court in this country would come to the result reached in this case where, as here, no unfulfilled adoption contract is involved. *See* Annot., 97 A.L.R.3d 347 (1980). The only cases that appear factually analogous hold that the doctrine of equitable adoption is not available against a blood relative of an adoptive parent. *Robinson v. Robinson,* 283 Ala. 257, 215 So.2d 585 (1967); *Dye v. Ghann,* 216 Ga. 743, 119 S.E.2d 700 (1961); *In Re Olson's Estate,* 244 Minn. 449, 70 N.W.2d 107 (1955); *Menees v. Cowgill,* 359 Mo. 697, 223 S.W.2d 412 (1949), *cert. denied,* 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585 (1950); *Pouncy v. Garner,* 626 S.W.2d 337 (Tex.App.1981).

Furthermore, I do not believe it is wise to treat, as Syllabus Point 2 of the majority

including real and personal, of such adopted child shall pass, according to the statutes of descent and distribution of this State, to those persons who would have taken had the decedent been the natural child of the adopting parent or parents.

6. We leave to another day the more troublesome question of whether the equitably adopted child would inherit from collateral kindred of the adoptive parent(s).

opinion suggests, an equitably adopted child as a "legally adopted child" for purposes of descent and distribution under W.Va.Code, 48–4–11(b). Under this statutory provision, for example, if a legally adopted child dies intestate, all property, including real and personal, of such child shall pass "according to the statutes of descent and distribution of this State, to those persons who would have taken had the decedent been the natural child of the adopting parent or parents." Placing an equitably adopted child in the same legal position as a statutorily adopted child under this provision would result in such child's bloodline being disinherited. I do not believe the Court intended a complete wedding of judge-made and statutory law, and as a consequence I would suggest that trial courts in the future read Syllabus Point 2 of the majority opinion narrowly and confine the holding in this case to its precise facts.

I am authorized to state that Chief Justice Miller joins me in this dissent.